[No. 60597-1. En Banc. June 23, 1994.]

LaMar D. Havens, *Petitioner*, v. C&D Plastics, Inc., et al, *Respondents*.

*Christensen, O'Connor, Johnson & Kindness,* by *F. Ross Boundy* and *McDonald & Quackenbush, P.S.,* by *Frances E. Pennell,* for petitioner.

*Edwards, Sieh, Wiggins & Hathaway, P.S.,* by *Malcolm L. Edwards; Culp, Guterson & Grader* and *Bruce W. Hilyer; David N. Mark,* for respondents.

BRACHTENBACH, J. — Issues in this employment termination case include whether the jury should have been instructed about what constitutes just cause for firing a "high ranking" employee; whether the employee's diary entries are admissible as evidence of just cause for dismissal; whether there was sufficient evidence to support a claim based on promissory estoppel; and, whether the trial court improperly dismissed the employee's claims of wrongful discharge in violation of public policy and negligent misrepresentation. We conclude that the trial court did not err in refusing to give the jury instruction, that there is no reversible error resulting from the trial court's exclusion of the diary entries, and that there was insufficient evidence to support the promissory estoppel claim. We uphold the dismissal of the public policy wrongful discharge claim and the negligent misrepresentation claim. The Court of Appeals decision in this case is affirmed in part and reversed in part, and this matter is remanded for recalculation of Plaintiff's attorney fee award.

In October 1986, Plaintiff LaMar D. Havens was hired by Defendant C&D Plastics, Inc. (C&D) to set up and operate a Washington division of C&D Plastics, Northwest Composites, to manufacture parts for The Boeing Company (Boeing). Plaintiff's employment resulted from conversations and negotiations between Plaintiff and the owner and chief executive officer of C&D, James Downey, and the president of C&D, Joseph Moran. The meetings were informal. After he was hired under an oral employment agreement, Plaintiff sent a letter to C&D confirming his understanding that he was to receive $70,000 in salary plus a fixed first year bonus of $15,000, with future years' bonuses based upon company profits. Nothing in this letter referred to length of the employment relationship, nor was any mention made of any just cause requirement for discharge.

Plaintiff's responsibilities included selecting a site, purchasing equipment, and hiring and firing personnel. However, practically from the outset, the parties' relationship was marred by disagreement, with early disagreement

about what kind of plant quality control manager was needed and how many quality control personnel were needed at the plant. Other disagreements arose. Plaintiff arranged to hire a friend as a maintenance man, at $32,000 a year. He believed he had authority to do so and thought the individual was experienced and qualified for the job. When owner-CEO Downey learned of the hiring, he informed Plaintiff that they paid such employees half that much in California. Downey was quite upset by the hiring, and in response Plaintiff reversed the hiring decision.

The question of the quality control manager position arose several times. The parties disagreed about what kind of person should be hired. Shortly before Plaintiff was fired, he declined to hire a C&D employee from California who traveled to Washington to interview for the position. Plaintiff said the California employee was not qualified for the position. President Moran had sent the employee to Washington, and he and Downey believed the man should have been hired.

Plaintiff wanted to hire an electrical contractor to install equipment at the plant. When he told Downey this, Downey told him that they never obtained electrical permits and that a C&D employee would install the equipment. In a similar vein, Plaintiff told Downey that Boeing should be notified of the new plant so it could inspect and certify the plant system before production began. Downey disagreed and told Plaintiff not to worry about it. Plaintiff did not pursue either of these matters further.

There was evidence that discussions between Plaintiff and Downey and Moran were far from cordial. For example, Moran testified that he and Plaintiff screamed at each other on one occasion. Plaintiff testified that Downey was loud and abusive.

During the course of his employment, Plaintiff kept a diary where he recorded events and expressions of his feelings about his employment with C&D and his relationships with Downey and Moran.

On February 2, 1987, within 4 months of being hired, Plaintiff was fired. In the letter of termination, Moran said that "things have not been what we hoped for", that "the chemistry with us does not mix well at all", and that "the differences we feel are irreconcilable". Clerk's Papers, at 1049.

After giving notice of termination, C&D promised severance pay. Plaintiff sent a letter stating his understanding that C&D would pay severance pay for 6 months or until Plaintiff found alternative employment, whichever occurred first, and that C&D would continue to provide health insurance. In this letter, Plaintiff made no claim for any additional money or benefits. Downey responded that severance pay would be paid for 3 months, with a possibility for additional severance pay if Plaintiff did not find a new job. When C&D was contacted by a lawyer whom Plaintiff had consulted, 6 weeks after he was discharged, C&D terminated the severance pay.

Plaintiff filed suit, alleging breach of contract, promissory estoppel, wrongful discharge in violation of public policy, negligent misrepresentation, age discrimination, defamation, and violation of the Consumer Protection Act (CPA). Before trial, Plaintiff voluntarily dismissed the defamation and CPA claims, and the trial court dismissed the wrongful discharge claim. At the end of Plaintiff's case, the court dismissed the negligent misrepresentation claim.

At the close of trial, the trial court instructed the jury on just cause for dismissal, but refused to give an instruction proposed by the defense on just cause where a "high-ranking" employee is involved.

The jury returned a special verdict awarding Plaintiff $65,901 for breach of a yearly employment contract (thus indicating a determination of a 1-year implied contract), $26,900 for breach of the severance pay agreement, and $363,958 on the promissory estoppel claim (this amount represents lost wages to the time of trial, ex. 25). The trial court "merged" the contract damage award into the promissory estoppel award, on the basis that Plaintiff would otherwise obtain a double recovery. The court awarded prejudg-

ment interest and attorney fees and costs to Plaintiff. The court denied a defense motion for a judgment n.o.v. on the promissory estoppel claim.

C&D and Downey (hereafter collectively Defendants)[1] appealed. The Court of Appeals reversed as to promissory estoppel, held that retrial was required on the implied contract claim, and affirmed dismissal of the wrongful discharge and negligent misrepresentation claims.

Plaintiff's petition for review was granted.

### JURY INSTRUCTION

The trial court refused to give Defendants' proposed jury instruction 16, which concerned what constitutes "good cause" or "just cause" for terminating a "high-ranking" employee. Defendants appealed, arguing the failure to give the instruction was reversible error because the jury was without guidance as to what constitutes just cause for discharging such an employee. The Court of Appeals agreed, holding that the instruction is necessary to permit Defendants to adequately argue that just cause existed for Plaintiff's termination. The court said that Defendants are entitled to an instruction in substantially the language they requested. We disagree.

The number and specific language of jury instructions is a matter within the trial court's discretion. *Douglas v. Freeman*, 117 Wn.2d 242, 256, 814 P.2d 1160 (1991). Instructions are sufficient which permit a party to argue that party's theory of the case, are not misleading, and when read as a whole properly inform the trier of fact on the applicable law. *Douglas*, at 256-57. If these requirements are met, it is not error to refuse to give a detailed augmenting instruction. *Crossen v. Skagit Cy.*, 100 Wn.2d 355, 360, 669 P.2d 1244 (1983). Similarly, "[i]t is not error to refuse to give a cumulative instruction or one collateral to or repetitious of

---

[1]The trial court granted Defendants' posttrial motion to dismiss Moran as an individual defendant. Although Plaintiff challenged this dismissal, the Court of Appeals affirmed the judgment in Moran's favor. Plaintiff abandoned this challenge in his Amended Petition for Review.

instructions already given." *State v. Benn*, 120 Wn.2d 631, 655, 845 P.2d 289, *cert. denied*, 126 L. Ed. 2d 331 (1993).

Jury instruction 18 defined just cause as follows:

> Just cause, or good cause, for the purposes of these instructions, is defined as a fair and honest reason for dismissal, exercised in good faith on the part of the party exercising the power. A discharge for just or good cause is one that is based on facts that (1) are supported by substantial evidence; (2) are reasonably believed by the employer to be true; and (3) are not for any arbitrary or capricious or illegal reason.

Clerk's Papers, at 570.

This unchallenged instruction accords with the definition approved in *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 769 P.2d 298 (1989).

Defendants' proposed instruction 16 states:

> In deciding whether C & D had "good cause" or "just cause" to terminate the plaintiff, substantial weight must be given to managerial discretion. In determining what is "good cause" or "just cause" to support termination of a high-ranking employee, an employer is entitled to consider such intangible attributes as personality, initiative, ability to function as part of a management team and ability to motivate subordinates.

Clerk's Papers, at 631.

The trial court refused to give the proposed instruction on the grounds that the instruction was encompassed by instruction 18. The Court of Appeals reasoned, however, that the language of jury instruction 18, "arbitrary or capricious or illegal", does not include ability to function as part of a management team, and thus the instruction did not enable Defendants to argue their theory of the case. *Havens v. C&D Plastics, Inc.*, 68 Wn. App. 159, 170, 842 P.2d 975 (1992), *review granted*, 122 Wn.2d 1023 (1993).

The Court of Appeals' reasoning fails to account for the definition in jury instruction 18 that just cause is "a fair and honest reason for dismissal, exercised in good faith" and, *further*, is not arbitrary, capricious, or illegal. *See Baldwin*, at 139. Thus, the fact that ability to function as part of a management team may not be encompassed within the "arbitrary or capricious or illegal" language is not determinative. Instruction 18 permitted Defendants to argue that just cause

for dismissal, as "a fair and honest reason for dismissal, exercised in good faith", includes the inability to function as part of a management team. In addition, instruction 18 permitted Defendants to argue that an employer should be able to exercise managerial discretion in deciding what constitutes just cause for dismissal of someone in Plaintiff's position. The trial court therefore did not abuse its discretion by refusing to give the proposed instruction.

■■ Moreover, the proposed instruction contains an erroneous statement of the law. In *Baldwin*, this court struck a balance between the employer's interest in making personnel decisions and the employee's interest in continued employment by approving a just cause standard which checks the employer's subjective good faith standard with an objective reasonable belief standard. *Baldwin*, at 139. By directing the jury to give substantial weight to the employer's decision, the proposed instruction alters the balance carefully delineated in *Baldwin*, and shifts it impermissibly in favor of the employer. It is not error to refuse to give an instruction containing a misstatement of the law. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 499, 859 P.2d 26, 865 P.2d 507 (1993).

In summary, refusing to give the "just cause" definition in the proposed instruction was not an abuse of discretion in light of jury instruction 18, and, in any event, by directing that substantial weight be given the employer's decision, the proposed instruction contains an erroneous statement of the law. However, we also note that the term "high-ranking employee" is fraught with uncertainty. We further note that Plaintiff has not complained about whether the specific definition of "just cause" in the proposed instruction is proper,[2] nor has any challenge been made as to whether "bad chemistry" may constitute just cause for firing an employee. We do not reach these issues. Our holding that Defendants could argue their theory of the case under jury instruction

[2]At least one of the "intangibles" in proposed instruction 16 is of doubtful validity as a basis for discharge. "Personality" is an extremely broad term, and it may be questioned whether it constitutes a "just cause" standard at all.

18 should not be read as implicit approval of the definition in proposed instruction 16.

## DIARY ENTRIES

Plaintiff kept a diary in which he recorded various business notes and comments, including some personal comments about business situations, meetings, conversations, and the like. The trial court ruled that entries from this diary were inadmissible as substantive evidence because the employer did not know of them at the time Plaintiff was discharged. The court also seemed to reason the entries were inadmissible hearsay. The trial court said that the diary entries could be used to refresh Plaintiff's memory and for impeachment purposes. The diary itself was never offered in evidence. Defendants rely on an offer of proof of five brief excerpts.

Defendants appealed, arguing that the trial court abused its discretion in excluding the diary entries, and arguing that they were the strongest documentary evidence that Plaintiff was fired for just cause. The Court of Appeals agreed that the trial court committed reversible error in excluding the diary entries. We disagree.

█ █ Under ER 402, all relevant evidence is admissible, unless otherwise excluded by the evidence rules. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Trial court rulings on admissibility of evidence are generally reviewed under an abuse of discretion standard. *Brouillet v. Cowles Pub'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990). A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993).

█ Plaintiff does not argue that the five diary entries at issue are inadmissible hearsay, and we conclude they are not. They qualify as admissions under ER 801(d)(2), in that they are inconsistent with Plaintiff's position at trial. *See*

*generally* 5B Karl B. Tegland, Wash. Prac., *Evidence* § 344(2) (3d ed. 1989). Nor do we agree that the entries are inadmissible on the basis that an employer cannot justify a prior discharge on the basis of facts acquired during litigation. *See Hollingsworth v. Washington Mut. Sav. Bank*, 37 Wn. App. 386, 394, 681 P.2d 845 (relied upon by Plaintiff), *review denied*, 103 Wn.2d 1007 (1984); *see also Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 815 P.2d 1362 (1991) (whether there was just cause for discharge depends upon what the employer reasonably believed to be true at the time of the discharge).

The diary entries are evidence of what was going on at the time of the employment relationship and constitute, at the least, circumstantial evidence of the parties' "chemistry", in that a jury could infer that Plaintiff's conduct, demeanor, and the like in his relationship with Downey and Moran accorded with what he said in the diary. Moreover, some of the entries involve recorded events and conversations, and thus are evidence of what was known to the employer at the time. In accord with the court's analysis in *Hollingsworth*, at 394, the employer did not attempt to use the diary entries as an after-the-fact reason for the discharge, *i.e.*, a different reason than that advanced at the time of the discharge.

The trial court's reasons for excluding the diary entries are untenable. Plaintiff maintains, though, that admitting the entries would threaten societal values of privacy and free expression, protected by the First and Ninth Amendment. He has presented inadequate argument and authority for this proposition, and we will not address constitutional arguments which are not supported by adequate briefing. *State v. Hill*, 123 Wn.2d 641, 648, 870 P.2d 313 (1994).[3]

Despite our conclusion that the trial court's reasons for excluding the evidence are untenable, there was no reversible error. The exclusion of evidence which is cumulative or has speculative probative value is not reversible

---

[3]Plaintiff advanced other arguments in the Court of Appeals for inadmissibility of the diary entries. He has abandoned those arguments in this court.

error. *Henry v. Leonardo Truck Lines, Inc.*, 24 Wn. App. 643, 602 P.2d 1203 (1979); *see also, e.g., Tumelson v. Todhunter*, 105 Wn.2d 596, 603, 716 P.2d 890 (1986); *Moore v. Smith*, 89 Wn.2d 932, 941-42, 578 P.2d 26 (1978). The evidence need not be identical to that which is admitted; instead, harmless error, if error at all, results where evidence is excluded which is, in substance, the same as other evidence which is admitted. *See, e.g., Moore*, at 941-42 (no reversible error where "the substance" of the excluded evidence, an exhibit, came out at trial in testimony); *Mason v. Bon Marche Corp.*, 64 Wn.2d 177, 179, 390 P.2d 997 (1964) (no reversible error where no offer of proof and no showing that excluded evidence differed "in any material respect" from that which was admitted); *Gaffney v. Scott Pub'g Co.*, 41 Wn.2d 191, 194, 248 P.2d 390 (1952) (no reversible error where other testimony was "in substance, the same as" the excluded evidence), *cert. denied*, 345 U.S. 992 (1953).

The diary entries at issue include statements showing Plaintiff's negative feelings about Downey and Moran following disagreeable conversations with Downey, Plaintiff's emphatic disbelief when Downey told him after one unpleasant encounter that he would be Downey's best manager, and an entry where Plaintiff told Downey Plaintiff did not need him, to which Downey responded by saying if Plaintiff missed anything he would no longer work for Downey.

■ The substance of these entries, however, was otherwise admitted through the testimony of many of the witnesses, including Plaintiff, Downey and Moran. Moreover, there was abundant testimony of the contentious and disharmonious relationship of the parties, *i.e.*, of "bad chemistry". The only one of the statements about which there might be a question is the fifth diary entry at issue, wherein Plaintiff wrote that he told Moran he could not fault them for firing him, as they had obvious differences. At trial, Plaintiff testified that he "may" have told Moran this. Although the use of the word "may" is somewhat equivocal, the statement itself is the same. In addition, after full review, we conclude that in the context of the entire exten-

sive trial record, the value of the diary entry, in addition to that to which Plaintiff testified, was speculative. It is extremely unlikely that admission of this entry would have affected the outcome of the trial.

We hold that any error in excluding the diary entries was harmless error.

### PROMISSORY ESTOPPEL

The jury awarded $65,901 for breach of contract, and $363,958 based on promissory estoppel. The contract award was merged into the promissory estoppel award. Defendants argued on appeal that their motion for judgment n.o.v. should have been granted because there was insufficient evidence of a legally enforceable promise of permanent employment subject to termination only for just cause, and insufficient evidence of reliance on any such promise. The Court of Appeals agreed, as do we. Because we affirm the Court of Appeals on this ground, we do not reach the alternative basis for that court's decision, involving the question whether promissory estoppel is applicable where consideration for the promise has been given. Nor is it necessary, in light of our disposition of this issue, to consider the parties' other arguments pertaining to the promissory estoppel claim.

> In ruling on a motion for judgment notwithstanding the verdict, a trial court exercises no discretion. The court must accept the truth of the nonmoving party's evidence and draw all favorable inferences that may reasonably be evinced. The evidence must be viewed in the light most favorable to the nonmoving party; the court may grant the motion only where there is no competent evidence or reasonable inference that would sustain a verdict for the nonmoving party. " 'If there is any justifiable evidence upon which reasonable minds might reach conclusions that sustain the verdict, the question is for the jury.' "

(Footnotes omitted.) *Douglas v. Freeman*, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991).

To obtain recovery in promissory estoppel, plaintiff must establish

> "(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3)

which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise."

*Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2, 616 P.2d 644 (1980) (quoting *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967)); *see* Restatement (Second) of Contracts § 90 (1981).[4] Promissory estoppel requires the existence of a promise. *Klinke*, at 259; Restatement (Second) of Contracts § 90. A promise is "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made." Restatement (Second) of Contracts § 2(1); *see* § 90 cmt. a (referring to promise definition in § 2).

Plaintiff argues that the Court of Appeals mistakenly ruled that Plaintiff was required to establish an unequivocal promise that he could be discharged only for just cause. He complains that the Court of Appeals erroneously relied upon language in *Siekawitch v. Washington Beef Producers, Inc.*, 58 Wn. App. 454, 793 P.2d 994 (1990): " '[O]nly when the parties specifically bargain for security will the law require just cause for termination.' " *Havens v. C&D Plastics, Inc.*, 68 Wn. App. 159, 166, 842 P.2d 975 (1992) (quoting *Siekawitch*, at 462), *review granted*, 122 Wn.2d 1023 (1993).

---

[4]Jury instruction 14 provided:

"In order for you to find that plaintiff is entitled to recover on his claim for promissory estoppel, or reliance, against the defendant, you must find by a preponderance of the evidence that:

"(1) The defendant made statements to the plaintiff which the plaintiff reasonably understood to mean that his employment would not be terminated without just cause; and

"(2) Such statements were either intended to induce the plaintiff to believe, or that the defendant should have known that the plaintiff would so understand, that the offered employment would be terminable only for just cause; and

"(3) That plaintiff took substantial action in reliance on such statements; and

"(4) The termination of plaintiff's employment was not for good cause." Clerk's Papers, at 566.

Jury instruction 15 provided:

"The term 'promissory estoppel' is a legal term and means that a person will be prevented (estopped) from denying the consequences of his statements, or promises, that another has reasonably relied upon and has changed positions because of that reliance." Clerk's Papers, at 567.

Plaintiff also urges that definiteness is a contractual requirement which is not necessary for promissory estoppel, and that promissory estoppel may be used to enforce promises that are indefinite or silent as to key terms.

To the extent the Court of Appeals' reliance on the language from *Siekawitch* was intended to mean that mutual assent is required, it is incorrect, as promissory estoppel does not require mutual assent. *See* Joseph D. Weinstein, *Promissory Estoppel in Washington*, 55 Wash. L. Rev. 795, 797 (1980). However, although promissory estoppel may apply in the absence of mutual assent or consideration, the doctrine may not be used as a way of supplying a promise. 1 Henry H. Perritt, Jr., *Employee Dismissal Law and Practice* § 4.39, at 344, 348 (3d ed. 1992). "A promise is the sine qua non of promissory estoppel." *Hunt v. Great W. Sav. Bank*, 54 Wn. App. 571, 576 n.4, 774 P.2d 554 (1989) (citing *Klinke), review denied*, 113 Wn.2d 1037 (1990). Thus, to the extent Plaintiff appears to suggest that the degree of his reliance may counterbalance the absence of the required promise, the implication must be rejected.

We agree with the weight of authority that where the terminable-at-will doctrine is concerned, the promise for promissory estoppel must be a "clear and definite promise". 1 Paul H. Tobias, *Litigating Wrongful Discharge Claims* § 4.52, at 4-89 (1993). *E.g., Taylor v. Canteen Corp.*, 789 F. Supp. 279 (C.D. Ill. 1992); *Gries v. Zimmer, Inc.*, 709 F. Supp. 1374, 1384-85 (W.D.N.C. 1989) (applying Indiana law); *D'Ulisse-Cupo v. Board of Directors of Notre Dame High Sch.*, 202 Conn. 206, 213, 520 A.2d 217 (1987); *Spanier v. TCF Bank Sav.*, 495 N.W.2d 18, 20 (Minn. Ct. App. 1993). The requirement of a clear and definite promise is consistent with this state's terminable-at-will doctrine; where exceptions to the terminable-at-will rule have been recognized, they have been carefully drawn. *See generally Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 685 P.2d 1081 (1984). The promise must also be one which the promisor would reasonably expect to cause the promisee to change his posi-

tion in reliance on the promise. Restatement (Second) of Contracts § 90 (1981).

Here, there is no clear and definite promise of permanent employment subject only to dismissal for just cause.

Plaintiff relies upon a number of statements and circumstances as constituting a promise of permanent employment subject only to a just cause dismissal. Many of these statements are typical of those often made in the interviewing process (such as what it would take to get Plaintiff to leave his present job and come to work for C&D), and statements relating to the nature of the job for which he was hired (such as the setup and operation would be "his show"). Other statements are consistent with the 1-year contract which the jury found, but do not constitute a clear and definite promise of permanent employment subject to just cause dismissal only (such as discussion of a first year's salary and bonus plus discussion about projected rates of compensation for later years of employment, without any indication of the duration of that employment).

Plaintiff says Defendants never told Plaintiff his employment would be terminable at will. However, terminable at will is the general rule, not the exception. Further, there is no dispute that Defendants never told him he would only be fired for just cause, either.

In fact, as the Court of Appeals observed, Plaintiff's own testimony shows there was never any mention of termination of employment. Plaintiff testified: "There was no downside risk discussed. There was no discussion of anything but what was on the up-side. Nothing was discussed about what if something went bad or there were problems." Verbatim Report of Proceedings, at 255. Plaintiff's own letter confirming the oral agreement of his employment does not indicate that any promise for permanent employment subject only to discharge for just cause was made. Pl.'s ex. 5.

Defendants stated that they were looking forward to a long and prosperous future together, and Plaintiff testified that he told Defendants that he expected to remain at Northwest Composites until he retired. The Court of Appeals cor-

rectly observed that such statements by Defendants are consistent with the general expectation present in any such negotiation: the employer was hoping for and expecting a long-term, mutually satisfactory relationship. Plaintiff's own expectations do not constitute a promise by the employer, and in any case are also consistent with the general hope and expectation of a long relationship.

Plaintiff also relies upon Moran's testimony that he told Plaintiff that Defendants were good to their employees and firing was a last resort. To establish a promissory estoppel claim, a party must show reliance upon the alleged promise. There is no evidence of any reliance by Plaintiff upon the "last resort" statement which Moran testified he made (nor is it clear that the statement was intended to apply to Plaintiff).

Finally, Plaintiff relies on *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 503-04, 814 P.2d 1219, 821 P.2d 1235 (1991). The reliance is misplaced. *Malarkey* involved a claim of implied contract, not promissory estoppel. The Plaintiff there paid for a share of the business and the court reasoned from this and other circumstances that the parties mutually intended the employment relationship to be other than terminable at will. Further, the Plaintiff, having paid additional consideration, could be discharged only for cause. *See, e.g., Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984).

The Court of Appeals' holding that Plaintiff presented insufficient evidence of a promise to support a promissory estoppel claim is affirmed; the trial court should have granted Defendants' motion for a judgment n.o.v.

## Wrongful Discharge

The trial court dismissed Plaintiff's claim that he had been wrongfully discharged in violation of public policy. In brief, Plaintiff alleged that Defendants circumvented Boeing's certification requirements regarding preproduction surveys of manufacturing facilities of parts suppliers. Plaintiff says that C&D falsely represented that parts produced at the Northwest Composites plant would be produced using

the same equipment, personnel, and quality control system which had been used in a Boeing-certified California facility and then transferred up to the Washington plant. Plaintiff claims that he was fired to prevent him from revealing the misrepresentation. Plaintiff maintains the certification requirements imposed on C&D by its contract with Boeing are FAA mandated, and thus his discharge violated public policy (public safety) underlying those requirements.[5]

 The trial court granted Defendants' motion in limine to exclude evidence of any violation of Boeing's plant certification requirements. The trial court ruled that Plaintiff failed to offer evidence of a sufficient nexus between the Boeing certification requirements and his termination, and therefore the evidence was not admissible in support of a wrongful discharge claim. Absent the excluded evidence, Plaintiff conceded, the wrongful discharge claim failed. The trial court subsequently dismissed the wrongful discharge claim. The Court of Appeals affirmed. We agree that Plaintiff failed to present sufficient evidence of a nexus between his termination and the Boeing certification requirements. In light of this conclusion, we need not and do not reach the question whether certain federal regulations which Plaintiff argues underlie the Boeing certification requirements may serve as the basis for a claim of wrongful discharge in violation of public policy.

 The trial court's ruling on the motion in limine had the effect of dismissing the wrongful discharge claim in entirety, and the trial court entered an order stating it treated the motion in limine as a motion for dismissal and/or summary judgment. Therefore, the summary judgment standard for appellate review is appropriate. The court engages in the same inquiry as the trial court. *Swanson v.*

---

[5]Plaintiff also argued to the trial court and the Court of Appeals that he was discharged in violation of public policy underlying the state electrical code, which Plaintiff says requires that Northwest Composites obtain a permit to install certain equipment at the plant. Both courts rejected this argument. Plaintiff has not argued this issue in his Amended Petition for Review, and we deem it abandoned.

*Liquid Air Corp.*, 118 Wn.2d 512, 518, 826 P.2d 664 (1992). Summary judgment is proper if

> the pleadings, depositions; answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c); *Swanson*, at 518. Facts and the reasonable inferences therefrom are considered in favor of the nonmoving party, and summary judgment should be granted in favor of the moving party only if reasonable minds could reach but one conclusion from all the evidence. *Swanson*, at 518; *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

A cause of action in tort exists for wrongful discharge if the employee's discharge "contravenes a clear mandate of public policy." *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232, 685 P.2d 1081 (1984). In Washington, this exception to the terminable-at-will doctrine is "a narrow one". *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 53, 821 P.2d 18 (1991); *Thompson*, at 232. "[W]rongful termination of employment in violation of public policy . . . [is] an intentional tort." *Cagle v. Burns & Roe, Inc.*, 106 Wn.2d 911, 916, 726 P.2d 434 (1986). The Plaintiff must establish the wrongful intent to discharge in contravention of public policy. *Hibbert v. Centennial Villas, Inc.*, 56 Wn. App. 889, 894-95, 786 P.2d 309 (1990).

Plaintiff claims there is sufficient evidence of a nexus between the quality control issue and his discharge as follows: Based upon his prior experience, Plaintiff thought the Northwest Composites plant would need to be surveyed and approved before any parts could be accepted by Boeing. Plaintiff averred that this impression was confirmed in meetings with a Boeing buyer, and that Defendant Downey was present at one of the meetings. At a meeting held about 2 weeks before his discharge, Plaintiff raised the Boeing quality control survey issue with Downey, who purportedly said he would avoid preproduction qualification of the Washington plant by invoicing or shipping parts as if they were made in California. Plaintiff said in his affidavit that "I

was very uncomfortable with this procedure but I thought that I had some time to 'work the problem.' " Clerk's Papers, at 1415.

Plaintiff further averred that on the Friday before he was discharged, Downey called George Bath, an employee of the Boeing buyer, and told him that C&D was moving the operation to Washington that weekend, and that the same personnel, equipment, and quality control system that had been used in California would be used at the new facility (to manufacture stowage bin doors). Plaintiff says he was never told about the phone call to Bath. Plaintiff maintains that the same personnel, equipment, and quality control system were not moved to the new facility.

The difficulty with these factual allegations is that there is no evidence Plaintiff communicated to Downey any of his concerns about the Boeing quality control certification procedures. In his own words, he thought he had time to "work the problem". The Court of Appeals correctly said that Plaintiff failed to show he communicated his opposition to the alleged violations of the certification procedure, and he never personally refused to implement a company program violating "public policy". *See generally Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 668, 807 P.2d 830 (1991) (describing circumstances where terminations in violation of public policy have been found); *Dicomes v. State*, 113 Wn.2d 612, 618, 782 P.2d 1002 (1989) (same). Plaintiff has failed to present sufficient evidence of the required nexus to withstand summary judgment.

Other evidence upon which Plaintiff relies does not concern the Boeing certification requirements. For example, in an interrogatory answer is found: "Havens demonstrated that he could not accept management directives or accept company policy regarding such items as quality control." Pl.'s ex. 20. In supplementary answers, Defendants claimed Plaintiff was unwilling to perform in accordance with company philosophy, resisted taking direction regarding hiring of employees, including the California employee Plaintiff

refused to hire for the quality control manager position, and was "defensive, personalizing and disagreements [*sic*] and unwilling or unable to follow and accept company policy without continuously trying to justify the superiority of his own views." Pl.'s ex. 23.

Plaintiff and Defendants clearly disagreed about the quality control manager position and its nature and how many employees were needed for quality control at the plant, and did so virtually from the outset of their relationship. For example, Defendants thought the C&D employee at the California facility who was sent up to interview with Plaintiff should have been hired as the quality control manager. Plaintiff thought he was not qualified and did not hire him for the position.

While the parties disagreed about the quality control manager position at the plant and what person should be hired for the position, and how many quality control staff were needed at the plant, evidence of these disputes does not involve the Boeing certification requirements and the alleged violation of FAA regulations, and is not evidence of the required nexus. It is clear that Plaintiff himself recognized the difference between the two types of evidence. In an offer of proof on this matter, Plaintiff drew a clear distinction between "the staff for the quality control department" and "the necessity for a Boeing . . . survey of the facility". Verbatim Report of Proceedings, at 1222; see Verbatim Report of Proceedings, at 1219-22.

The trial court and the Court of Appeals correctly determined that Plaintiff failed to present sufficient evidence of a nexus between his discharge and alleged public policy violations to avoid summary judgment.

### Negligent Misrepresentation

After Plaintiff rested his case, the trial court granted Defendants' motion for dismissal and/or a directed verdict on the negligent misrepresentation claim. Plaintiff's claim rested upon alleged misrepresentations as to promised

authority and duration of employment. The court reasoned that enforcement of promises is the field of contract law, and that Plaintiff could make his arguments in contract. The Court of Appeals upheld the dismissal.

A motion for a directed verdict should be granted only if there is no evidence or reasonable inferences from the evidence which would sustain a verdict in favor of the nonmoving party. *Sprague v. Sumitomo Forestry Co.*, 104 Wn.2d 751, 762, 709 P.2d 1200 (1985).

This court has adopted the Restatement (Second) of Torts § 552 (1977), which sets forth the elements for a negligent misrepresentation cause of action:

> (1) One who, in the course of his business, profession or employment . . . supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*See, e.g., Haberman v. WPPSS*, 109 Wn.2d 107, 161-62, 744 P.2d 1032, 750 P.2d 254 (1987) (quoting Restatement (Second) of Torts § 552(1) (1977)), *appeal dismissed*, 488 U.S. 805 (1988).

The proof must be clear, cogent and convincing. *Sprague*, at 762.

Plaintiff maintains that contrary to the view of the trial court, a negligent misrepresentation claim may be based upon promises of future conduct, citing *Markov v. ABC Transfer & Storage Co.*, 76 Wn.2d 388, 396, 457 P.2d 535 (1969). Even if a future promise may underlie a negligent misrepresentation cause of action, Plaintiff has failed to present sufficient evidence to satisfy the requirements of Restatement section 552 and withstand the motion for dismissal and/or a directed verdict.

The evidence which Plaintiff presented to the Court of Appeals of promises underlying the negligent misrepresentation claim is largely the same evidence he relied upon in his promissory estoppel claim. Because we agree that Plain-

tiff has failed to present sufficient evidence of a promise for the promissory estoppel claim, we agree with the Court of Appeals that this evidence cannot establish a promise upon which to base a negligent misrepresentation claim regarding conditions of employment in excess of the 1-year implied contract period.

 ██ Further, each element of section 552 must be satisfied, and it must be kept in mind that the standard of proof is clear, cogent, and convincing. There must be justifiable reliance upon the negligent misrepresentation. *E.g., Condor Enters., Inc. v. Boise Cascade Corp.*, 71 Wn. App. 48, 52, 856 P.2d 713 (1993). Ordinarily this is a question of fact. *Barnes v. Cornerstone Invs., Inc.*, 54 Wn. App. 474, 773 P.2d 884, *review denied*, 113 Wn.2d 1012 (1989). However, " 'when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law.' " *Barnes*, at 478 (quoting *Hartley v. State*, 103 Wn.2d 768, 775, 698 P.2d 77 (1985)).

The negligent misrepresentation claimed here involves whether Defendants misrepresented their intent to keep alleged promises. Plaintiff argued in briefing to the Court of Appeals that Defendants' misrepresentations are sufficiently established by evidence of the casualness of the hiring, evidence that Plaintiff was hired to eliminate a competitor in the field, and Downey's testimony that after the first year the pay scheme was subject to revision. Plaintiff argues the latter testimony contradicts what Downey represented at the time of the parties' negotiations. (In his Amended Petition for Review, Plaintiff has identified no specific evidence of misrepresentation.)

However, this evidence does not tend to establish any misrepresentations which misled Plaintiff and upon which he justifiably relied. Plaintiff knew as well as Defendants that the hiring process was casual and that he was a potential competitor. If there was carelessness about intent to perform exhibited through these circumstances, it was as known to Plaintiff as to Defendants. Moreover, any representations as

to what would be paid after the first year were completely dependent upon whether Defendants retained Plaintiff — he was, after the first year, a terminable-at-will employee who would be paid nothing at all if he was not retained. Plaintiff has identified no then presently existing false information upon which he justifiably relied, and reasonable minds would reach only this conclusion. As a matter of law, his negligent misrepresentation claim fails.

 It must be remembered that insofar as any promises of performance are concerned, Plaintiff has prevailed in establishing a 1-year implied contract. Although promises of future conduct may support a contract claim (or similar claim such as promissory estoppel in an appropriate case), failure to perform them cannot alone establish the requisite negligence for negligent misrepresentation. *High Country Movin', Inc. v. U.S. West Direct Co.*, 839 P.2d 469, 471 (Colo. Ct. App. 1992). This is because of the absence of any false representation as to a presently existing fact, a prerequisite to a misrepresentation claim.

The trial court properly granted the directed verdict in favor of Defendants on the negligent misrepresentation claim, and the Court of Appeals is affirmed on this issue.

Finally, Defendants maintain that the trial court erroneously excluded the testimony of one of Plaintiff's co-workers. Plaintiff maintains Defendants failed to preserve the issue. We agree. The offer of proof which involved this co-worker was made solely with respect to admissibility of a diary entry (the particular entry is no longer at issue), and there was never any trial court ruling that the co-worker could not give independent testimony.

The Court of Appeals is affirmed in part and reversed in part. The promissory estoppel award of $363,958 is reversed. The breach of contract award of $65,901 is affirmed. As the Court of Appeals noted, the severance pay award of $26,900 is subsumed by the breach of contract award, for a net principal amount of $65,901. This case is remanded for recalcu-

lation of Plaintiff's attorney fee award which shall consist of a segregated award for services in the trial court relating to the breach of contract award, and for a segregated award for services in the Court of Appeals relating to the breach of contract award. There shall be no award of fees for services in this court. Judgment shall be entered in accordance with this opinion and its directions on remand.

ANDERSEN, C.J., and UTTER, DOLLIVER, DURHAM, SMITH, GUY, JOHNSON, and MADSEN, JJ., concur.

After modification, further reconsideration denied August 22, 1994.