[No. 21472-5-II.   Division Two.   June 12, 1998.]

JAMES BAKOTICH, *Appellant*, v. CARL SWANSON, ET AL., *Respondents*.

---

[1]The trial court did not have the benefit of having these cases before it when makings its decision.

312

*J. Emmett Freeley* and *Joseph L. Coniff, Jr.*, for appellant.

*Thomas A. Brown* of *Brown, Lewis, Janhunen & Spencer*, for respondents.

HUNT, J. — James Bakotich appeals the trial court's exclusion of evidence of his damages resulting from Carl Swanson's breach of an alleged employment contract. We affirm.

## FACTS

Carl Swanson and his brother, Chuck Swanson, sold supplies to the Kentucky Fried Chicken (KFC) restaurant in Hoquiam, where James Bakotich worked as a manager. Carl Swanson told Bakotich that he and his brother planned to open a canned food outlet; they discussed Bakotich's coming to work as the manager.

The parties dispute whether they reached an agreement that Bakotich would work for the Swansons at the outlet. But, for purposes of this appeal, the parties assume that there was an oral agreement for "at-will" employment.

In reliance on this oral employment agreement, Bakotich quit his position at KFC and reported to work at the Swansons' outlet store. Carl Swanson informed Bakotich that the outlet plans had fallen through and that there was no job. He offered Bakotich a delivery position, which Bakotich refused. Bakotich filed a breach of contract action, seeking damages for lost income and benefits.

At trial, the Swansons filed a motion in limine to exclude certain evidence. The trial court granted the motion and

excluded evidence of damages, including loss of earnings, future loss of earnings, and loss of pension and benefits. Believing this ruling precluded a meaningful presentation of his case, Bakotich agreed to dismissal of the case.

## ANALYSIS
### A. Standard of Review

■ We review under the abuse of discretion standard for evidentiary rulings. *Jacobs v. Brock*, 73 Wn.2d 234, 238, 437 P.2d 920 (1968) ("Relevancy of evidence is a matter within the discretion of the trial court.").[1]

### B. "At-Will" Employment

#### 1. Termination

■ ■ Generally, an employment contract indefinite in duration is terminable at-will by either the employee or the employer. *Roberts v. Atlantic Richfield Co.*, 88 Wn.2d 887, 894, 568 P.2d 764 (1977). The rule governing termination of at-will employees is generally that "employers [can] discharge employees for no cause, good cause or even cause morally wrong *without fear of liability.*" *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 225-26, 685 P.2d 1081 (1984) (emphasis added).[2] Normally an employer will not be held liable for any damage or lost income resulting from termination of an at-will employee. *Id.* at 225-26.

#### 2. Damages for Breach

Bakotich argues: (1) that normal employment-at-will

---

[1]Bakotich argues that the court should review under the summary judgment standard, viewing the evidence in the light most favorable to his position. But the trial court ruled neither on a summary judgment, nor on the facts or merits of Bakotich's cause of action. The trial court ruled simply on admissibility of evidence, stating that evidence of loss of wages and pension plans or benefits could not be presented to the jury because the agreement was for at-will employment. Bakotich decided this ruling effectively disposed of his case and agreed to a dismissal.

[2]The courts have carved out certain exceptions. Only one is relevant here—conversion to just-cause employment, which is discussed infra.

standards should not apply here because he never started his employment with the Swansons, and (2) that standard contract law applies instead, namely the doctrines of repudiation and anticipatory breach. Under these principles, an obligee may recover damages if the obligor repudiates the contract prior to performance. *Lovric v. Dunatov*, 18 Wn. App. 274, 567 P.2d 678 (1977).

Washington law is clear on the parties' rights under an at-will employment contract after employment begins: Generally, an employee cannot recover damages when terminated from at-will employment. Washington cases, however, have not addressed whether these rules apply when the prospective employee has not yet begun employment.

Other jurisdictions are split on the issue. For example, in *Heinritz v. Lawrence Univ.*, 194 Wis. 2d 606, 535 N.W.2d 81 (1995), the Wisconsin court held that an employer is not liable for breach of an at-will employment contract for withdrawing an offer of employment before the prospective employee commenced employment. Similarly, in *Robert J. Patterson, P.C. v. Leal*, 942 S.W.2d 692, 694 (Tex. Ct. App. 1997), the Texas court determined that there is no distinction between termination of at-will employment before or after starting to work.

Conversely, in *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1 A.L.R.5TH 1087 (9th Cir. 1990), the federal court confronted an employer who had breached an agreement with a prospective employee by failing to assign him work and salary after he had quit his current job and moved his residence in reliance upon the employer's offer. The court determined that the employer could be held liable for the employee's *reliance damages*. The court so held, even though, had actual employment commenced, it would have been governed by an at-will term in the contract. The court further held that the employee was not entitled to expectancy damages because the employer could have terminated his eventual employment at-will.

Washington courts have been reluctant to extend contract principles to employment at-will. For example, in *Thomp-*

*son*, plaintiff argued that the court should apply to employment at-will contracts the principle that in all contracts there is an implied covenant of good faith. *Thompson*, 102 Wn.2d at 227. But the court rejected the argument, stating:

> [W]hile an employer may agree to restrict or limit his right to discharge an employee, to imply such a restriction in that right from the existence of a contractual right, which, by its terms has no restrictions, is internally inconsistent. Such an intrusion into the employment relationship is merely a judicial substitute for collective bargaining which is more appropriately left to the legislative process.

*Thompson*, 102 Wn.2d at 228 (citation omitted).

Yet Washington courts have allowed limited exceptions to the employment-at-will doctrine. For example, the terms of an employee manual can become equivalent to an employment contract, converting an at-will employment relationship to just-cause employment. *See id.* at 233.

3. Exclusion of Evidence of Damages

Even assuming, without deciding, that Bakotich can recover under breach of contract and repudiation principles, the trial court did not abuse its discretion when it excluded evidence of lost wages and benefits damages on this claim.

■ Bakotich bargained for at-will employment. At most the contract required Swanson to allow Bakotich to begin employment. Thereafter, Swanson could have terminated Bakotich's employment at any time. As Swanson points out, an at-will employment contract anticipates that the employer may repudiate at any time without ramification.[3] *See id.* at 225-26. Accordingly, any lost wages or benefits

---

[3]Another contract principle, illusory promise, is also analogous. "A supposed promise may be illusory because it is so indefinite that it cannot be enforced, *or by reason of provisions contained in the promise which in effect make its performance optional or entirely discretionary on the part of the promisor.*" *Spooner v. Reserve Life Ins. Co.*, 47 Wn.2d 454, 458, 287 P.2d 735 (1955) (citations omitted) (emphasis added). Action on a supposed promise creates no obligation on an employer when the promise is illusory. *Id.* at 458. Under this rationale, Bakotich had nothing to enforce against Swanson and therefore no damages arise from the Swansons' failure to perform.

were highly speculative and properly excluded by the trial court.[4]

## C. Conversion to a Just-Cause Employment Contract

Bakotich's next argument lacks merit in that the at-will contract was not converted to a contract for employment terminable for cause when he offered additional consideration—his KFC pension.[5] Bakotich argues he agreed to cash-out his pension plan with KFC and to invest it in the Swansons' pension plan. But there is no evidence in the record that such a bilateral agreement existed, other than in Bakotich's mind.

Consideration sufficient to change the character of an at-will employment contract must be "consideration in addition to required services which results in a detriment to the employee and *a benefit to the employer.*" *Roberts*, 88 Wn.2d at 895 (emphasis added). And, "the consideration must be an integral part of the *employment* agreement . . . ." *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 506, 814 P.2d 1219, 821 P.2d 1235 (1991) (emphasis added).[6] Such consideration has not been established here.

First, there is no evidence in the record that such pen-

---

[4]*See Roberts*, 88 Wn.2d at 898 (court affirms trial court's decision to exclude testimony by expert on plaintiff's lost income because it is too speculative and based on an assumption that plaintiff had a just cause employment contract rather that an at-will contract); *McAnulty v. Snohomish Sch. Dist. No. 201*, 9 Wn. App. 834, 838, 515 P.2d 523 (1973) (where employment contract existed, discharged teacher could recover one year of income, but mere expectancy of employment is not sufficient to award contract damages for distant future).

[5]An exception to the rule of at-will employment is where the employee gives consideration in addition to the contemplated services. *Roberts*, 88 Wn.2d at 894. This changes the character from at-will employment to just-cause employment.

[6]*See Malarkey*, 62 Wn. App. at 506:

[T]he relevant inquiry is whether, in the circumstances of the particular case, the employee's decision to buy into the company, or to loan money to the company, or to divest himself of a prior business interest, or any combination of these factors, *is the type of decision which would ordinarily be made in the absence of something more than an offer of at-will employment.* Further, the consideration must be an integral part of the employment agreement, so as to

sion fund agreement, if it existed, was an integral part of the employment agreement. Bakotich cites *Malarkey* for support, but there the plaintiff invested $9,900 into the company, loaned the company $31,758, and divested himself of an existing business partnership. *Id.* at 499. The court found that these acts burdened the plaintiff, benefited the company, and were an integral part of the employment relationship. Here, there is nothing in the record to suggest that the Swansons would have refused Bakotich a position if he did not roll over his KFC pension fund into the Swansons' pension fund. Additionally, the Swansons did not receive any benefit from Bakotich's promised investment.

Further, Bakotich understood that any agreement was for employment at-will and that the Swansons could terminate him at any time. Therefore, any "agreement" to invest his pension with the Swansons could not have been of the type that Bakotich would have made in exchange for just-cause employment. Bakotich cannot argue after the fact that it was additional consideration which he believed made his employment terminable only for cause, when in fact he never believed that to be the case.

Additionally, an act normally done when changing employers, like giving up a current position or plan, is not sufficient consideration. For example, in *Roberts*, the court found that standard acts—such as leaving a long-term job, forgoing other job opportunities, moving when transfer was necessary or ordered, and deferred compensation (future pension benefits)—were not additional consideration sufficient to convert at-will employment to just-cause employ-

---

negate the general proposition of law that "employment for life" is the equivalent of indefinite employment, terminable at the will of either party.

We are satisfied that the evidence in this case would support a jury verdict of wrongful discharge based on the "additional consideration" exception. *A rational jury could find that Mr. Wyborney, as he testified, would not have accepted the employment, or purchased a minority interest, or loaned the money, or divested himself of the prior business interest, or contributed his expertise even in exchange for stock, in the absence of an offer or an implied offer for something more than at-will employment.*

(Emphasis added) (citations omitted).

ment. *Roberts*, 88 Wn.2d at 895-96. Rolling over a 401K or pension plan is a normal act when changing employers, but here, such offer neither conferred an extra benefit on the Swansons nor demanded an extra burden from Bakotich.

Accordingly, the trial court did not err by finding the agreement was for at-will employment and by rejecting evidence of damages resulting from breach of this purported agreement.

## D. Promissory Estoppel

■ Finally, Bakotich argues that liability should be imposed on Swanson based on promissory estoppel, because he gave up his current employment and benefits with the Swansons' knowledge. To obtain recovery in promissory estoppel, a plaintiff must establish:

> "(1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise."

*Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 259 n.2, 616 P.2d 644 (1980) (quoting *Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967)). "[W]here the terminable at[-]will doctrine is concerned, the promise for promissory estoppel must be a 'clear and definite promise.'" *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 173, 876 P.2d 435 (1994) (quoting 1 PAUL H. TOBIAS, LITIGATING WRONGFUL DISCHARGE CLAIMS § 4.52 at 4-89 (1993)).

In *Havens*, the court rejected a similar claim of promissory estoppel, because "there is no clear and definite promise of *permanent employment subject only to dismissal for just cause.*" *Id.* at 174 (emphasis added).[7] Bakotich relied only on a supposed promise of at-will employment.

---

[7]*See also Heinritz*, 535 N.W.2d at 83-84 (doctrine of promissory estoppel did not preclude employer from withdrawing its offer of employment: promise made by employer was for employment terminable at will; prospective employee's al-

There was no promise or reasonable expectation of permanent employment.[8]

The trial court did not abuse its discretion by excluding evidence of damages based on promissory estoppel.

## CONCLUSION

Affirmed.

HOUGHTON, C.J., and SEINFELD, J., concur.

leged detrimental reliance was on becoming an at-will employee; and reliance did not change nature of employer's promise, which was that employment relationship could be terminated by either party at any time without cause).

[8]Even if Bakotich believed or hoped he would be employed by Swanson for a long period of time, "Plaintiff's own expectations do not constitute a promise by the employer . . . ." *Havens,* 124 Wn.2d at 175.