[Nos. 16408–2–I; 17528–9–I.   Division One.   October 28, 1987.]

HUGO HOGLUND, ET AL, *Respondents,* v. RAYMARK INDUS-TRIES, INC., *Appellant.*

*Philip A. Talmadge* and *Karr, Tuttle, Koch, Campbell, Mawer & Morrow, P.S.,* for appellant.

*Richard J. Hilfer* and *Mark Leemon,* for respondents.

CALLOW, J.*—

FACTS

The plaintiff, Hugo Hoglund, was born on April 13, 1903, and was 81 years old at the time of trial. He had an eighth–grade education. He had lived in Belfair, Washington, since 1949 with his wife. The Hoglunds had no dependents.

Mr. Hoglund worked at the Puget Sound Naval Shipyard in Bremerton, Washington (hereinafter PSNS) from 1920 through 1954, first as an electrician's helper and then as an electrician. His duties included wiring ships. Although he never worked with asbestos personally, he frequently worked aboard naval vessels while in close proximity to other workers using asbestos insulation. He never wore a respirator while working at PSNS, nor was he ever instructed regarding the hazards of asbestos exposure or precautions that could be taken to avoid exposure.

The plaintiff was regularly exposed to asbestos fibers from asbestos cloth used aboard naval vessels in the process of insulating high temperature steam pipes. A steam pipe would be first encased in insulation, then covered with an asbestos "mud", and finally wrapped in asbestos cloth. The asbestos cloth was supplied in rolls, and pieces of the cloth would be cut, then torn from the rolls. When the cloth was torn, asbestos fibers and dust would fly into the air, where they would be inhaled by anyone in the vicinity.

One result of inhaling asbestos dust and fibers is a lung disease, asbestosis. When asbestos particles are inhaled, they cause fibrous scar tissue to develop on the pleura, the lining of the lung. As the disease progresses, scar tissue develops in the lung tissue itself. Healthy lung tissue is gradually replaced by useless scar tissue, causing shortness of breath. Each exposure to inhaled asbestos fiber causes additional injury to the lung. Even after exposure to asbestos ceases, the fibers remain in the lungs and continue to

---

*This appeal was heard by a Supreme Court Justice, a Superior Court Judge, and a retired Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

cause damage. There is no treatment or cure for asbestosis. Asbestosis can result in death, either from respiratory failure, or by rendering the lungs more vulnerable to infections such as pneumonia or influenza. Finally, asbestos is a carcinogen, and a significant percentage of those diagnosed as having asbestosis develop lung cancer.

Hugo Hoglund began to notice that he was short of breath upon his retirement in 1960. He was referred by his cardiologist to Richard Winterbauer, M.D., the chief of pulmonary disease at the Mason Clinic, who diagnosed asbestosis caused by exposure to asbestos at PSNS. In 1980, Dr. Winterbauer found Hoglund's vital capacity (lung volume) to be 71 percent of predicted normal, and his diffusion capacity (the ability of the lung to exchange oxygen and carbon dioxide) to be 70 percent of predicted normal. As Dr. Winterbauer observed Hoglund, his vital capacity fell to 53 percent of predicted in 1982, and his diffusion capacity fell to 56 percent of predicted in 1981, indicating a progressive loss of lung function. As a result of this diminished lung function, Hoglund's activities became progressively limited. At the time of trial he had difficulty walking more than 100 feet because he would become short of breath. As his lung function diminished, he gave up many of the activities he enjoyed, including dancing, and work with a volunteer fire department. His wife testified that he gradually quit doing anything, and that he was often tired and depressed.

In addition to evidence of Hoglund's asbestosis–related symptoms, there was ample testimony relating to other health conditions from which he suffered. His medical history indicated that he had been exposed to tuberculosis at one time, although there was conflicting evidence as to whether he had ever suffered from active tuberculosis. He also suffered from heart disease, severe osteoporosis which had led to compression fractures of the thoracic spine, an abdominal aortic aneurysm, a fractured hip, and senile dementia.

## Procedural History

Hugo Hoglund commenced the present action in King County Superior Court on or about October 14, 1981, alleging liability on the part of various asbestos manufacturers under theories of strict liability, failure to warn, wanton and malicious misconduct, and outrageous conduct. Hoglund sought compensatory and punitive damages, and his wife sought damages for loss of consortium.

Prior to trial, the plaintiffs entered into settlement conferences with a number of the defendants. At the time of trial three defendants remained: Raymark, Fibreboard Corporation, and Celotex Corporation. The jury returned a verdict of $550,000 for the plaintiffs. The defendants moved for judgment n.o.v., for a new trial, or for a reduction in the award. The trial court denied the motions for judgment n.o.v. and for a new trial, but granted a reduction to $360,000. The Hoglunds consented to the reduction in the verdict. A judgment on the reduced verdict was entered on April 3, 1985, from which Raymark and the other remaining defendants appealed; the plaintiffs also cross–appealed.

After the judgment was entered, the Hoglunds settled with Celotex and Fibreboard for $75,000 each, and the trial court approved the settlements. Raymark also appeals from the order approving these settlements. The two appeals have been consolidated for consideration by this court.

The issues presented are:

1. Did the trial court abuse its discretion in admitting documents from the Sumner Simpson papers?
2. Did the trial court err in failing to instruct the jury that the verdict must be for the defendants if they found the cause of the injury to be the act of some third person or entity not a party to the lawsuit?
3. Did the trial court err in failing to instruct the jury that it may consider compliance with governmental standards as evidence pertaining to the issue of negligence?

4. Did the trial court err in failing to instruct the jury concerning the responsibility of the employer to provide an employee with a safe workplace?
5. Did the trial court err in failing to grant a new trial for reasons of excessive damages?
6. Did the trial court err in approving the reasonableness of settlements between the plaintiffs and Celotex and Fibreboard after entry of the judgment against the defendants who were jointly and severally liable?

I

The Sumner Simpson papers are a collection of letters, memoranda and articles circulated among various scientists and asbestos industry executives during the 1930's and 1940's. The documents were found in Raybestos facilities and named after Sumner Simpson, the president of Raybestos from 1929 to 1948. Among other things, the papers address research into the hazards of asbestos exposure in mines and factories, as well as concerns about the potential impact of adverse publicity upon the asbestos industry. They have been admitted in a number of cases to support the argument that the dangers of asbestos exposure were known to the asbestos industry during that time period.

Raymark contends that the Sumner Simpson papers were improperly admitted, claiming that they are irrelevant to both the strict liability and the negligence claims of the plaintiff, and that they are confusing, misleading, unfairly prejudicial and waste the court's time.

The plaintiffs admit that the documents are irrelevant to the strict liability claim, but argue that they are relevant to the negligence claim, as the trial judge determined. We agree.

Excerpts from the Sumner Simpson papers have been admitted in other jurisdictions to show knowledge of asbestosis and other risks associated with asbestos exposure. *See, e.g., Jackson v. Johns–Manville Sales Corp.,* 750 F.2d 1314

(5th Cir. 1985), *cert. denied,* 106 S. Ct. 3339 (1986); *Hendrix v. Raybestos–Manhattan, Inc.,* 776 F.2d 1492 (11th Cir. 1985).

█ The Washington Supreme Court has recently addressed the admissibility of certain excerpts from the Sumner Simpson papers in a shipyard worker's negligence claim in *Lockwood v. AC & S, Inc.,* 109 Wn.2d 235, 744 P.2d 605 (1987). In that case, the court found that the papers were relevant to Lockwood's negligence claim, reasoning that

> The essence of Lockwood's negligence claim was that Raymark was negligent in failing to warn foreseeable product users of the dangers of asbestos. The focus of the inquiry into alleged negligence is on the reasonableness of the manufacturer's conduct. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 72, 684 P.2d 692 (1984). A manufacturer can be found negligent for failing to give an adequate warning of the hazards involved in using its product which are known, or in the exercise of reasonable care should have been known, to the manufacturer. *Callahan v. Keystone Fireworks Mfg. Co.,* 72 Wn.2d 823, 827, 435 P.2d 626 (1967); *Novak v. Piggly Wiggly Puget Sound Co.,* 22 Wn. App. 407, 412, 591 P.2d 791 (1979). Hence, the manufacturer's knowledge of the product, its dangerousness, and the hazards involved in reasonably foreseeable uses of the product, is pertinent in determining the reasonableness of the manufacturer's conduct in failing to warn users.
>
> Evidence is relevant it if tends to make the existence of any fact that is material to the determination of an action more or less probable than it would be without the evidence. ER 401. Lockwood introduced the Sumner Simpson papers to show that Raymark knew or should have known of the hazards posed by asbestos products to shipyard workers. The letters at issue indicate that in the 1930's, Raymark knew that health hazards were associated with asbestos. . . .˙

*Lockwood,* at 251–52. The *Lockwood* court concluded that the subject matter of the Sumner Simpson papers was "not so remote as to render them irrelevant to a negligence claim by a shipyard worker." *Lockwood,* at 253.

Like the *Lockwood* claim, the negligence claim asserted in the present case is based upon a failure to warn, which puts at issue the asbestos industry's knowledge of asbestos–related risks before and during the time the plaintiff was exposed to asbestos fibers. We adopt the reasoning of *Lockwood* and find that the Sumner Simpson papers are relevant to the Hoglunds' negligence claim.

Raymark also argues that the Sumner Simpson papers should have been excluded as unfairly prejudicial and likely to confuse and mislead the jury. We disagree. The trial judge analyzed the Sumner Simpson papers under ER 403 and declined to exclude them. A trial judge has wide discretion in balancing the probative value of evidence against its potential prejudicial impact. *State v. Coe,* 101 Wn.2d 772, 684 P.2d 668 (1984).

We do not find the admission of the papers to have been an abuse of discretion, particularly in light of the recent *Lockwood* opinion, which addressed the issue and found the Sumner Simpson papers not unfairly prejudicial or likely to mislead or confuse the jury:

> Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. ER 403. The trial court has broad discretion in balancing the probative value of evidence against the potentially harmful consequences that might result from its admission. *State v. Coe,* 101 Wn.2d 772, 782, 684 P.2d 668 (1984); *State v. Gatalski,* 40 Wn. App. 601, 610, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985).
>
> The term "unfair prejudice" as it is used in rule 403 usually refers to prejudice that results from evidence that is more likely to cause an emotional response than a rational decision by the jury. 5 K. Tegland [Wash. Prac.] § 106, at 249–50. According to the advisory committee's notes on Fed. R. Evid. 403, which is identical to ER 403, "'unfair prejudice' means an 'undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" 1 J. Weinstein & M. Berger, *Evidence* ¶ 403[03], at 403–33 (1985). We do not believe that the evidence admitted from the Sumner Simpson papers presented a danger of unfair prejudice

which substantially outweighed its probative value. The letters were probative of Lockwood's negligence claims. There is nothing unduly inflammatory in the letters themselves that would prevent the jury from making a rational decision. . . .

We also conclude that there was little danger that the introduction of this evidence would confuse the issues or mislead the jury.

*Lockwood,* at 256–57.

II

■ Raymark assigns error to the giving of jury instruction 7 as follows:

There may be more than one proximate cause of the same alleged harm. If you find that a defendant's product was not reasonably safe or that a defendant failed to give an adequate warning, and that such unsafe condition or failure to warn was a proximate cause of injury or damage to the plaintiff, or if you find one or more of the defendants was negligent, and that such negligence was a proximate cause of injury or damage to the plaintiff, it is not a defense that some other cause or the act of some other person or entity who is not a party to this lawsuit may also have been a proximate cause.

Instruction 7 was taken from the first paragraph of Washington Pattern Jury Instructions (WPI) 12.04. Raymark argues that the second paragraph of WPI 12.04 should have been given as well. That second paragraph reads:

[However, if you find that the sole proximate cause of injury or damage to the plaintiff was [some other force] [some other cause] [or] [the act of some other person who is not a party to this lawsuit] then your verdict should be for the defendant.]

Raymark's exception to instruction 7, as stated, seemed to ask the court to rewrite the instruction. If a party is dissatisfied with an instruction, it is that party's duty to propose an appropriate instruction and, if the court fails to give the instruction, take exception to that failure. If a party does not propose an appropriate instruction, it cannot complain about the court's failure to give it. *Martin v. Huston,* 11

Wn. App. 294, 299, 522 P.2d 192 (1974). Because Raymark failed to offer an instruction which included the second paragraph of WPI 12.04, we will not hold that the trial court erred in not giving such an instruction.

### III

■ Raymark assigns error to the court's failure to give defendants' proposed jury instruction 39, which read:

> Compliance with industry and government codes, standards, or recommendations may be considered by you as evidence as to whether or not the manufacturer was free of negligence in marketing and labeling its product.

Raymark claims that this instruction is required by RCW 7.72.050(2), which provides:

> When the injury–causing aspect of the product was, at the time of manufacture, in compliance with a specific mandatory government contract specification relating to design or warnings, this compliance shall be an absolute defense. When the injury–causing aspect of the product was not, at the time of manufacture, in compliance with a specific mandatory government specification relating to design or warnings, the product shall be deemed not reasonably safe under RCW 7.72.030(1).

The purpose of this statute is to avoid holding a manufacturer liable for its failure to violate governmental standards when it is later found that those standards would have, if followed, produced an unsafe product. This conundrum has not arisen in the instant case. Raymark's argument suggests that the fact that government specifications required its products to contain asbestos should absolve Raymark of liability for injuries caused by the nature of the product and Raymark's failure to warn of its dangers. Although the government did require the asbestos products to meet certain standards, the standards did not specify whether warning labels should or should not be attached to advise workers of the hazards of asbestos. The governmental standards respecting Raymark's asbestos products did not prevent Raymark from fulfilling its duty to warn of the

dangers posed by exposure to the products. RCW 7.72-.050(2) does not excuse Raymark from liability for its failure to warn.

The proposed jury instruction implies that because the governmental standards did not require warning labels, Raymark should not be liable for its failure to warn. This is not true. Therefore, the court had good reason to exclude the instruction from those given to the jury, and did not err in failing to give the instruction.

## IV

Raymark argues that the court erred in failing to instruct the jury concerning the duty of PSNS to provide its employees with a safe work environment by allowing them to work with or in close proximity to asbestos products without adequate safeguards. In *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481 (3d Cir. 1985) the court determined that any failure of the employer to safeguard its workers or to warn them of the hazards of asbestos exposure was neither the sole proximate cause of asbestosis injuries, nor a superseding cause. As the opinion stated:

> The sole proximate cause defense, however, is particularly difficult to demonstrate in a failure to warn context, for one must show that the third party's conduct in some way negates the proposition that plaintiffs would have avoided injury had they been appropriately warned. Without evidence supporting such a negation, there may be no finding that the third party's conduct was the only substantial factor, or sole proximate cause. In the present case, sole proximate cause might have been shown if there were some evidence that Philip Carey would have removed the warning labels, or would have forced its employees in some manner to work in direct contact with asbestos against their will. But the only employer conduct that the defendant suppliers pointed to was "the failure to properly regulate the workplace . . . [the] failure to develop engineering and dust control, [the] failure to provide personal protection and adequate medical monitoring, the [the] failure to educate workers despite [Philip Carey's] knowledge of the hazards of prolonged

asbestos exposure." Brief for ACL at 26. These are acts of omission, not commission. None of them negates the proposition that had plaintiffs been aware of the danger, they would have taken steps to protect themselves.

Consequently, the district judge was justified in not charging the jury as defendants requested, because they had failed to introduce sufficient evidence to support their defense of sole proximate cause.

*Van Buskirk,* at 493.

The *Van Buskirk* court also rejected the argument that the employer's failure to provide a safe work environment or to warn of asbestos dangers might have been a superseding cause of the plaintiffs' harm, thereby relieving the asbestos manufacturers of liability for the injuries:

> Section 452, which states the general rule that a third party's failure to prevent harm is not a superseding cause, also supports the district judge's instruction here. *See* § 452(1) Restatement (Second) of Torts (1965). The only exception to the general rule is where the duty to prevent harm has shifted to the third party. Restatement (Second) of Torts, § 452(2) (1965). But in the strict liability context, "the duty to provide a non–defective product is non–delegable." *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 103, 337 A.2d 893, 903 (1975). If the duty is non–delegable, it cannot be shifted. Therefore, *Berkebile* strongly suggests that in a strict liability situation, a third party's failure to warn will not constitute a superseding cause.

(Footnote omitted.) *Van Buskirk,* at 497.

■ Washington law supports the same conclusion. To remove liability from the original tortfeasor, the intervening negligence of another must be so extraordinary or unexpected that it falls outside the realm of reasonably foreseeable events; unless this threshold is met, there is not superseding cause. *Smith v. Acme Paving Co.,* 16 Wn. App. 389, 558 P.2d 811 (1976). The actions of the government through its management of PSNS were not unexpected or extraordinary, since the procedures for using asbestos products at PSNS were similar or identical to those followed elsewhere. Indeed, the procedures for use of asbestos cloth

were so widely known that Raymark found it unnecessary to issue instructions for its use.

At most, the failure of the government to warn Hoglund of the danger of asbestos exposure was a concurring cause of his injury and, as such, did not remove Raymark from liability for the injury. According to the Restatement of Torts § 439, as quoted in *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 364 P.2d 796 (1961):

> "'If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability.'"

An instruction regarding the duty of PSNS to provide a safe workplace for its employees would have been misleading to the jury, since it would imply that a breach of this duty would relieve the manufacturers of liability for injuries which might have been prevented by PSNS. The trial judge properly refused to give the instruction.

V

Raymark asserts that the damages awarded to the plaintiffs were so excessive as to indicate that the award was the result of passion or prejudice.

CR 59 states in pertinent part:

> The verdict or other decision may be vacated and a new trial granted to all or any of the parties and on all or part of the issues when such issues are clearly and fairly separable and distinct, on the motion of the party aggrieved for any one of the following causes materially affecting the substantial rights of such parties:
>
> . . .
>
> (5) Damages so excessive or inadequate as unmistakably to indicate that the verdict must have been the result of passion or prejudice;

CR 59(a)(5). RCW 4.76.030 also provides in relevant part:

> If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or

inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction or increase of such verdict . . .

Raymark argues that if this case were tried under the tort reform act of 1986, the Hoglunds would have been limited to $117,000 in "non–economic" damages, and that therefore a total award of $550,000, reduced to $360,000 by the trial judge, was clearly excessive. The Hoglunds, on the other hand, now contend that the remittitur to $360,000 was erroneous, and that they should be entitled to the original verdict of $550,000.

██ The jury is the appropriate assessor of damages, and its determination should be overturned only in the most extraordinary circumstances. As stated in *James v. Robeck*, 79 Wn.2d 864, 869, 470 P.2d 878 (1971):

> If the evidence supports the verdict and the trial has been conducted without error of sufficient gravity to warrant a reversal, the trial court cannot substitute its views of damages for those of the jury. To the jury is consigned under the constitution the ultimate power to weigh the evidence and determine the facts—and the amount of damages in a particular case is an ultimate fact.

The opinion goes on to state:

> [W]e think the court should first look to the scope or range of the evidence in relation to the verdict. In those instances where the verdict is reasonably within the range of proven damages, whether conflicting, disputed or not, and where it can be said that the jury, in exercising its exclusive power, could believe or disbelieve some of it and weigh all of it and remain within the range of the evidence in returning the challenged verdict, then it cannot be found as a matter of law that the verdict was unmistakably so excessive or inadequate as to show that the jury had been motivated by passion or prejudice solely because of the amount.

*James*, at 870–71.

In *Bingaman v. Grays Harbor Comm'ty Hosp.*, 103 Wn.2d 831, 699 P.2d 1230 (1985) the jury's verdict found damages for pain and suffering to be $412,000. The deceased's pain and suffering prior to death had lasted for 35 hours. The trial court ordered a reduction in those damages to $206,000. On appeal the reduction was reversed and the verdict reinstated. As stated by the court, "The verdict of a jury does not carry its own death warrant solely by reason of its size." 103 Wn.2d at 838.

While the deceased in *Bingaman* suffered for only 35 hours, Hoglund had been suffering from asbestosis for at least 25 years at the time of trial. Since 1960, his shortness of breath had progressed until he could not walk more than 100 feet on flat ground without shortness of breath. We cannot conclude that the jury's award of $550,000 was clearly excessive.

■ The proper amount of damages in this case was for the jury. The record shows ample evidence of the extreme discomfort caused by the asbestosis from which Hoglund suffered. It would also be reasonable to conclude that his death was hastened by the fact that he suffered from asbestosis and therefore was more susceptible to pneumonia than he would have been had he not suffered from the disease. While it may be true that the Hoglunds' recovery would have been limited by the tort reform act had this case been tried after the act took effect, the award was not clearly excessive in light of other awards given in personal injury cases tried before the advent of the tort reform act. The mere fact that the award exceeded the limits imposed by the tort reform act does not in itself indicate that the award was "so excessive . . . as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice," so as to necessitate a new trial or a reduction of the verdict under RCW 4.76.030. We uphold the original award in that amount.

## VI

Finally, Raymark asserts that the court erred in approving as reasonable a settlement between the Hoglunds and the other two defendants for $75,000 each.

Several factors are proper considerations for a trial judge to use in approving settlements. Those factors are:

> [T]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion, or fraud; the extent of the releasing person's investigation and preparation of the case; and the interests of the parties not being released.

*Glover v. Tacoma Gen. Hosp.*, 98 Wn.2d 708, 717, 658 P.2d 1230 (1983).

■ The court considered each of the *Glover* factors in detail and concluded that a settlement of $75,000 from each of two defendants was reasonable. We find the trial judge's consideration of the various factors to be appropriate and the conclusion reached reasonable. We uphold the post-trial settlement as approved by the trial court.

The judgment of the trial court in favor of the plaintiffs is affirmed and the original jury verdict of $550,000 is reinstated.

COLE and PITT, JJ. Pro Tem., concur.

Review denied by Supreme Court March 11, 1988.