[No. 43257-5-I. Division One. March 20, 2000.]
SONDRA GOEHLE, *Appellant,* v. FRED HUTCHINSON CANCER RESEARCH CENTER, *Respondent.*

610

*Judith A. Lonnquist*, for appellant.

*Suzanne Kelly Michael, Michael B. King,* and *Paul M. Nordsletten* of *Lane Powell Spears Lubersky, L.L.P.,* for respondent.

WEBSTER, J. — Appellant Sondra Goehle did not prevail at trial in her employment discrimination suit against her employer Respondent Fred Hutchinson Cancer Research Center. On appeal she challenges the trial court's refusal to give her proposed discrimination instruction and claims the instruction on negligent supervision or retention was incorrect as a matter of law. She also challenges several evidentiary rulings. We reject Goehle's instructional challenges because she failed to comply with CR 51(f), which requires a litigant objecting to jury instructions to provide the trial court with adequate grounds for the objections. Finding no merit in Goehle's evidentiary challenges, we affirm.

## BACKGROUND

Goehle, an American-born citizen over 40 years of age, has been a long time employee at the Center. For many years her direct supervisor was Dr. Frederich Schuening. When Schuening left the Center, Dr. Hans-Peter Kiem, a German national, became her supervisor. She claims that Kiem discriminated against her on the basis of age and national origin. She claims that Kiem: (1) repeatedly called her old and made comments to the effect that she was too old to learn new lab techniques; (2) often referred to her and others as lazy Americans and said that he could replace her with two Germans for the same amount of money; and (3) took away some of her responsibilities. She complained to Dr. Rainer Storb, Kiem's supervisor. An investigation into her allegations and meetings between Goehle, Storb, Kiem, and David Sarju, director of human resources, followed. Eventually, Goehle was offered and accepted another position at the Center that paid less and was of lesser status.

Goehle file suit in October 1996. She claimed age, sex,

and national origin discrimination and retaliation. She also claimed negligent supervision and retention.

Approximately five weeks before trial and well beyond the case schedule deadline for doing so, the Center disclosed an expert witness. Goehle made a motion to exclude. The trial court denied the motion but limited the testimony to the Center's investigation and response to Goehle's complaints, required that the witness be made available for deposition within ten days, and imposed sanctions.

The trial started on June 8, 1998, and ended with a jury verdict in favor of the Center on June 26, 1998.

Goehle disclosed a rebuttal expert witness on the fourth day of trial.[1] The expert was to testify on the Center's investigation and response to Goehle's complaints. The Center moved to exclude. Late in the trial, the court granted the motion. The trial court indicated that the proposed expert did not have the appropriate expertise in age or national origin discrimination. Prior to the court's ruling excluding the expert, the trial court limited the length of Goehle's cross-examination of Sarju, the director of human resources, who participated in the Center's response to Goehle's complaints.

The trial court admitted into evidence, over objection, entries from Goehle's personal diary in which she wrote about her work experiences at the Center, including information pertaining to her relationship with Kiem.

The trial court admitted into evidence, over objection, testimony concerning Goehle's misrepresentation on her 1979 job application to the Center. The Center learned of this misrepresentation after litigation was initiated.

The trial court held an informal jury instructions conference over a lunch break. Goehle's lead attorney did not attend the instructions conference because she was preparing for closing argument and sent a colleague from her firm who had not participated in the trial and was not familiar

---

[1]Apparently she had not been planning on calling an expert until she learned that the Center was calling one.

with the facts of the case. No recorded exceptions hearing was held. The trial court refused to give Goehle's proposed instruction on age and national origin discrimination. No instruction was given in its place. The trial court instructed on discrimination based on a hostile work environment. The trial court gave the Center's proposed instruction on negligent supervision or retention.

Goehle submitted written posttrial exceptions objecting to the court's refusal to give her proposed instruction on age and national origin discrimination and objecting to language in the instruction on negligent supervision or retention.

## ANALYSIS
### I. Challenges to Jury Instructions

*A. Goehle Failed to Provide Adequate Grounds for Her Objection to the Trial Court's Refusal to Give Her Proposed Instruction on a Disparate Treatment Theory of Discrimination*
### 1. RAP 10.3(g)

Preliminarily, the Center argues that Goehle's challenge to the trial court's refusal to give her instruction on discrimination should be rejected because it does not comply with Rule of Appellate Procedure 10.3(g). RAP 10.3(g) provides:

**Special Provisions for Assignments of Error.** A separate assignment of error for each instruction which a party contends was improperly given or refused must be included with reference to each instruction or proposed instruction by number. . . . The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

 A technical violation of the rules will not ordinarily bar appellate review where justice is to be served. *See Green River Community College Dist. No. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 431, 730 P.2d 653 (1986).

The appellate court will review the merits of the appeal where the nature of the challenge is perfectly clear and the challenged ruling is set forth in the appellate brief. *See id.*

The Center is correct that Goehle fails to strictly comply with RAP 10.3(g) because she fails to reference in her brief the proposed instruction that she claims was improperly refused. She does not identify the proposed instruction in her assignments of error, in her issue statements, or in the argument section of her brief.

But Goehle's argument that the court erred in refusing to instruct the jury on her age discrimination claim is clear enough, and although Goehle failed even in her reply brief (knowing that the Center raised this issue) to provide the text of the proposed instruction or even cite to its location in the record,[2] the rejected proposed discrimination instruction was easily discovered upon perusal of the proposed jury instructions in the clerk's papers. CP at 153. Thus, we decline to refuse review under RAP 10.3(g).

### 2. CR 51(f)

The second preliminary argument that the Center presents is that Goehle's challenge to the rejected discrimination instruction is precluded because she failed to comply with CR 51(f). The Center makes two arguments here: (1) that Goehle did not comply with CR 51(f) because she failed to provide the trial court with adequate grounds for her objection to the court's refusal to give her discrimination instruction, and (2) that Goehle's proposed instruction did not correctly state the law.

If a party is not satisfied with an instruction, it has a duty to propose an appropriate instruction. *See Hoglund v. Raymark Indus., Inc.*, 50 Wn. App. 360, 368, 749 P.2d 164 (1987). If the court fails to give the proposed instruction, the party must take exception to that failure. *See id.* CR 51(f) provides procedures for objecting to instructions given or refused:

---

[2]The Center provided the text of the rejected proposed instruction in Appendix A of its brief.

**Objections to Instruction.** Before instructing the jury, the court shall supply counsel with copies of its proposed instructions which shall be numbered. Counsel shall then be afforded an opportunity in the absence of the jury to make objections to the giving of any instruction and to the refusal to give a requested instruction. The objector shall state distinctly the matter to which he objects and the grounds of his objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made.

■ ■ The purpose of CR 51(f) is to assure that the trial court is sufficiently apprised of any alleged error in the instructions so that the court is afforded an opportunity to correct any mistakes before they are made and thus avoid the inefficiencies of a new trial. *See Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 63, 882 P.2d 703, 891 P.2d 718 (1994); *Van Hout v. Celotex Corp.*, 121 Wn.2d 697, 703, 853 P.2d 908 (1993). "The pertinent inquiry on review is whether the exception was sufficient to apprise the trial judge of the nature and substance of the objection." *Walker v. State*, 121 Wn.2d 214, 217, 848 P.2d 721 (1993). "[U]nder some circumstances compliance with the purpose of the rule will excuse technical noncompliance." *Queen City Farms*, 126 Wn.2d at 63.

In her written, posttrial exceptions to the trial court, Goehle stated:

Plaintiff excepts to the Court's failure to give her proposed Instruction at p. 10 of her June 4, 1998 [sic] submission. The Court erroneously failed and refused to submit to the jury an age and/or national origin discrimination claim for which there was direct and/or indirect evidence of discriminatory animus.

CP at 275.

We agree that this exception does not state adequate grounds to apprise the trial court of the points of law or questions of fact in dispute and thus does not comply with CR 51(f). We do not see why Goehle should be excused from complying with CR 51(f) simply because the jury

instructions conference here was held informally. She has not persuaded us that she was precluded from making her objections on the record after the informal conference but before the instructions were given. Goehle complains in her brief that she was prejudiced by the trial court's rush to finish the case and informs us that the trial court precluded discussion of the instructions on the record. She claims the trial court prevented her from pointing out instructional error. But she has not pointed to any discussion in the record that indicates that the trial court rushed the parties or that the parties were surprised by, or made objections to, the pace of the proceedings. More significantly, she fails to point us to anything in the record that suggests that she attempted to place her instructional objections and grounds on the record but was cut short by the trial court. Had the trial court here prevented Goehle's attempt to state her objections and grounds on the record, we would have a different story on appeal.[3]

Goehle asserts that because the purpose of CR 51(f) is to inform the court of any errors before the fact, there was no need under the circumstances of posttrial written exceptions to be specific regarding the grounds for her objections.

But where a trial court allows postinstructional objections, compliance with CR 51(f) gives the trial court an opportunity to consider whether a new trial is warranted due

---

[3]In her reply to the Center's arguments under CR 51(f), Goehle asserts that the trial court failed to comply with CR 51's mandatory procedures concerning jury instructions. The Center contends that Goehle raises this argument for the first time in her reply brief and moves to strike that portion of the reply brief containing this argument. Goehle responds that she properly replied to the Center's arguments. We deny the Center's motion to strike but consider Goehle's arguments only to the extent that they are appropriately in response to the Center's arguments. To the extent that Goehle raises the trial court's failure to comply with CR 51(f) as a ground for reversal, we do not consider her argument because she raises the issue for the first time in her reply brief. *See* Appellant's Reply Br. at 5 ("Civil Rule 51 provides yet another glaring example of the extent to which the trial judge committed reversible error in the conduct of this case."). She did not assign error to the issue in her opening brief. Thus, we do not consider this argument as grounds for reversal. *See Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

to significant instructional errors. Thus, the trial court is afforded an opportunity to correct errors without the necessity of an appeal. Furthermore, compliance with the rule provides the reviewing court with a fuller understanding of the points of law or questions of fact in dispute and assures it that the trial court was apprised of such and had the opportunity to correct its own errors. Compliance with the requirements of CR 51(f), even after the fact, is necessary to proper review.

Objections to instructions and grounds for the objections must be made on the record in compliance with CR 51(f). The trial court must afford counsel an opportunity to do so. Here, we reject Goehle's instructional challenge because she failed to comply with the rule. Because we find that she failed to adequately state grounds for her objections, we need not address whether the proposed instruction misstated the law.

### B. Goehle Failed to Provide Adequate Grounds for Her Objection to the Trial Court's Instruction on Negligent Supervision and Retention

Goehle argues that the trial court's instruction on negligent supervision and retention misstated the law. The Center argues that Goehle's challenge to the instruction on negligent supervision or retention should be rejected because she again failed to comply with CR 51(f). Goehle's written posttrial exception stated: "Plaintiff excepts to Instruction No. 10 as contrary to law, a misstatement of law, and/or imposing unduly burdensome requirements upon Plaintiff." CP at 274. We find, for the same reasons stated above, that Goehle failed to comply with CR 51(f). Thus, we decline to address the merits of her challenge.

## II. Evidentiary Rulings

### A. Standard of Review

"A trial court has broad discretion in ruling on evidentiary matters and will not be overturned absent manifest abuse of discretion." *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997).

## B. *The Trial Court Did Not Abuse Its Discretion by Allowing the Testimony of the Center's Expert Witness Who Was Untimely Disclosed*

Goehle moved under King County Local Rule 26 to exclude the testimony of the Center's expert Jan Salisbury because the expert was not timely disclosed. On May 13, 1998, the trial court ruled:

> The court finds that the disclosure on May 1 of Ms. Salisbury does not conform to the spirit or letter of the case schedule. Providing dates without identity or a statement of the witness's opinions is woefully insufficient. There is no basis for the late identification or why this witness could not formulate her opinions on a timely basis.

> IT IS HEREBY ORDERED that Jan Salisbury is permitted to testify as an expert witness only as to the investigation of this complaint and the appropriateness of the defendant's response as identified in the witness disclosure. Defendant shall make Ms. Salisbury available for deposition within 10 days; defendant shall pay $750.00 to plaintiff, no later than May 28, to offset expenses of Ms. Salisbury's deposition at this very late date.

CP at 27-28. The trial began on June 8, 1998.

In *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 497, 933 P.2d 1036 (1997), the Supreme Court found that the trial court abused its discretion by imposing the severe sanction of limiting discovery and excluding expert witness testimony without having considered lesser sanctions. The court further found that the sanctions imposed were too severe considering the length of time to trial, the severe injury to the plaintiff, and the absence of a finding that a court order was willfully disregarded. *See id.* at 497-98.

Here, we find that the trial court did not abuse its discretion. Although the court found that there was no excuse for the Center's failure to comply with discovery, it did not make a finding that the conduct was willful. And although the trial court's ruling was made approximately three weeks before trial, it sought to expedite the deposition by

requiring that it occur within ten days. Furthermore, the court limited the expert's testimony and imposed a $750.00 sanction. The trial court properly sought lesser sanctions than exclusion of the expert.

C. *The Trial Court Did Not Abuse Its Discretion by Excluding the Testimony of Goehle's Expert Witness*

The trial court granted the Center's motion to exclude the testimony of Goehle's expert witness Susan Webb.[4] Both experts were to be limited to testimony regarding the quality of the investigation or the lack of a reasonable, prompt, and effective investigation. 12 RP at 82. In discussing the motion to exclude, the trial court stated:

> I was especially uncomfortable in Miss Webb's deposition by her, again, what I consider to be kind of a breezy, well, harassment is harassment, and sure, sex is like others, you know. Maybe it has a difference because once in awhile, you have an attraction in a sexual context.
>
> I just don't find that scientific. I think there needs to be considerably more detail having been paid during the course of a career to age harassment and/or national origin. That doesn't happen to be her background.

12 RP at 83-84.

Finding the witness wanting in the education, training, and experience required to assist the jury, the court went on to state:

> And I don't find this a close case. She has no particular expertise. Literally one age case that she's worked on. No testimonial experience.
>
> . . . . I find that she is not, on this issue, a satisfactory expert witness.
>
> Again not because she has no expertise. She does have expertise. But she does not have expertise in the area that I'm interested [sic] or that I believe that there might be room for expert testimony.

12 RP at 84-85.

---

[4]Goehle's rebuttal expert witness was identified four days into trial.

■ Goehle asserted below and asserts on appeal that her expert's qualifications were on par with those of the Center's expert. Goehle argues that the trial court's finding that Webb was not qualified to testify because she did not have sufficient expertise in age or national origin discrimination is not a sound basis for its ruling because Webb was to testify only regarding the appropriateness of the Center's investigation into Goehle's complaints. But the trial judge recognized the limitation on expert testimony at the time that she made her ruling. She apparently was nevertheless concerned that Webb's lack of background in age and national origin cases would make a difference even in the area of the limited testimony. The trial court reviewed the expert's qualifications and stated on the record that the witness was excluded for lack of expertise; we find no abuse of discretion.

D. *Goehle Fails to Assign Error to Her Claim that The Trial Court Abused Its Discretion in Limiting the Length of Goehle's Cross-Examination of a Witness*

Goehle fails to assign an error or identify an issue regarding the trial court's limitation of the length of her cross-examination of David Sarju but argues in her brief that she was prejudiced by the court's action. Because no error is assigned, we need not address her argument.

E. *The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Misrepresentations that Goehle Made in Her 1979 Job Application to the Center that the Center Discovered After Litigation Was Initiated*

Goehle stated on her 1979 job application that she had earned B.S. and B.A. degrees when in fact she had not. The Center discovered this misrepresentation after litigation began. Goehle argues that the job application is after-acquired, or after-discovered, evidence and urges this court to reject the after-discovered evidence rule. The Center argues that Washington courts have adopted the after-discovered evidence rule and contends alternatively that the evidence was properly admitted as relevant to Goehle's credibility.

The United States Supreme Court held that evidence of an employee's misconduct that is discovered after litigation is initiated is admissible and may reduce the damage award calculation, but it does not bar all relief. *See McKennon v. Nashville Banner Publ'g Co.*, 513 U.S. 352, 356, 115 S. Ct. 879, 130 L. Ed. 2d 852 (1995). To limit the damage award, the employer must first establish that the misconduct was of such severity that the employee would have been terminated on the basis of the misconduct alone if the employer had known of it. *Id.* at 362-63. Division Three of this court recently held that *McKennon* applies to claims brought under chapter 49.60 RCW. *See Janson v. North Valley Hosp.*, 93 Wn. App. 892, 900, 971 P.2d 67 (1999) (holding under *McKennon* that the trial court abused its discretion in excluding admittedly prejudicial evidence of a drug conviction and its omission from an employment application).

Goehle urges that the after-discovered evidence rule should be rejected because it would undermine the policy of deterring and eliminating discrimination in Washington. She asserts that the victims of discrimination will be revictimized at trial because employers will seek to expose all the employee's faults and past mistakes.

Nevertheless, we are not persuaded to disagree with *Janson*. The *McKennon* court recognized the substantial concern that employers might undertake extensive discovery into an employee's background or performance to reduce their damage awards in discrimination suits but also recognized the legitimate interests of employers. *See McKennon*, 513 U.S. at 361, 363. The Court determined that to account for the lawful prerogatives and discretions of employers in hiring, promoting, and discharging their employees, remedies could be limited: in these cases, reinstatement and front pay are inappropriate and back pay may be calculated from the date of an unlawful discharge to the date the evidence of misconduct was discovered.

We find under *McKennon* and *Janson* that the trial court here did not abuse its discretion in admitting the evidence.

Although the Center did not terminate Goehle when it discovered the misrepresentation during litigation, it did not seek to limit damages on this ground. The after-discovered evidence of misconduct in this case involved a misrepresentation and was thus relevant to Goehle's credibility.

### F. The Trial Court Did Not Abuse Its Discretion by Admitting Goehle's Private Diary

Goehle argues that admission of her diary entries was error because it was inadmissible hearsay. She argues as well that admission of the diary entries was an invasion of her privacy.

Goehle's reliance on certain cases is misplaced. She points to *Baxter v. Safeway Stores, Inc.*, 13 Wn. App. 229, 534 P.2d 585 (1975), for the proposition that diary entries are inadmissible hearsay. But in *Baxter*, the diary was properly excluded because it was *self-serving* hearsay, prepared on the advice of counsel and in anticipation of litigation. *See id.* at 236-37. She also looks to *State v. Dodd*, 120 Wn.2d 1, 838 P.2d 86 (1992). But that case is a far cry from this one. In *Dodd*, diary excerpts containing details of the defendant's rapes and gruesome murders of young boys were properly excluded from the sentencing hearing as a caution against a sentence based on passion or prejudice. *See id.* at 27-28. Finally, *Sevener v. Northwest Tractor & Equipment Corp.*, 41 Wn.2d 1, 14-15, 247 P.2d 237 (1952), stands only for the proposition that a diary used to refresh a witness's memory does not automatically become admissible: "A diary or other writing is not made evidence by its use to refresh the memory of a witness or by the fact that it would be permissible to use it for such purpose." (Internal quotation marks omitted.)

The Washington Supreme Court held that diary entries are not inadmissible hearsay and may qualify as admis-

sions under ER 801(d)(2)[5] where they are inconsistent with a plaintiff's position at trial. *See Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994). In that employment termination case, the court found that the diary entries were evidence of what was going on at the time of the employment relationship and were at least circumstantial evidence of the parties' "chemistry." *See id.* at 169. The court concluded that the trial court erred in excluding the entries but found the error harmless. The plaintiff asserted that admissions of the entries threatened privacy and free speech but the court declined to address these constitutional issues because they were inadequately briefed.

The statements here were used against Goehle and were evidence of her relationships at work. We conclude under *Havens* that the entries are not inadmissible hearsay.

Nor are we persuaded by Goehle's privacy argument. Certainly the right to privacy is an important and substantial right. Washington recognizes the common law right to privacy and tort liability for invasion of privacy. *See Reid v. Pierce County*, 136 Wn.2d 195, 206, 961 P.2d 333 (1998).[6] But Goehle fails to explain how this tort raises a bar to admission of evidence under the evidence rules. Furthermore, she fails to demonstrate that the elements of invasion of privacy are even met here. Finally, she fails to demonstrate that her constitutional rights were violated here or that she has a constitutional right to prohibit relevant evidence from admission in a civil suit that she initiated.

---

[5]ER 801(d)(2) provides that a statement is not hearsay if: "The statement is offered against a party and is (i) the party's own statement, in either an individual or a representative capacity, . . . ."

[6]The rule for the invasion of privacy is:

One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

(a) would be highly offensive to a reasonable person, and

(b) is not of legitimate concern to the public.

*Reid*, 136 Wn.2d at 205 (quoting RESTATEMENT (SECOND) OF TORTS § 652D (1977)).

624

Thus, we find that the trial court did not abuse its discretion by admitting the diary entries.

CONCLUSION

We affirm.

COLEMAN and BAKER, JJ., concur.

Reconsideration denied May 22, 2000.

Review denied at 142 Wn.2d 1010 (2000).