# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STOCK & ASSOCIATES, INC., a
Washington corporation,

        Appellant,

        v.

STUART McLEOD, an individual, and
McLEOD DEVELOPMENT COMPANY,
a Washington company,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

NO. 70335-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 6, 2014

Lau, J. – Stock & Associates sued Stuart McLeod (McLeod) and McLeod

Development Company (MDC) for sums allegedly owed under a professional services

contract. The jury awarded Stock damages on only one out of the seven of its

additional service request claims. For the first time on appeal, Stock challenges the trial

court's failure to instruct the jury on its alternative quantum meruit theory. Because

Stock failed to take exception to that instruction, the error is waived. And because the

error, if any, of allowing the jury to consider evidence of MDC's counterclaim is

harmless, we affirm the judgment entered on the jury's verdict.

## FACTS

In May 2007, McLeod hired Stock on behalf of MDC to provide architectural services in connection with a proposed mixed-use development in Kirkland, Washington. Stock agreed to provide design services and assigned architect Mark Smedley to manage the project. McLeod hired Jim Alekson to manage the project on behalf of MDC.

In late November, Smedley gave Alekson an unmodified version of a standardized contract entitled "AIA Document B151 – 1997" (Form B151). He subsequently gave Alekson an "Exhibit A" and an "Attachment B." Exhibit A contained Stock's "Lake Street Mixed-Use Fee Proposal Breakdown." The proposed fee was $1,414,948. Attachment B contained a narrative "intended to clarify the scope of the Architectural Services." On January 2, 2008, Smedley sent McLeod an invoice for services performed during October 2007. Along with the invoice, Smedley included a narrative stating, "We have now begun billing towards the Main Contract that we proposed to you and Jim Alekson." The main contract had not been finalized. Smedley anticipated that Alekson would provide feedback on the Form B151, Exhibit A, and Attachment B.

On January 12, 2008, Alekson proposed several modifications to the Form B151. Alekson wrote in an e-mail, "If you have any questions or require clarification of any of the suggested amendments to the document, please call or email."

After Stock expressed concern that they had not finalized the contract, McLeod asked the parties to focus on the project, not the contract. He testified at trial, "[T]hey expressed some concern about not getting paid and I said that I would take care of

them. And I did take care of them." Report of Proceedings (RP) (Nov. 1, 2012) at 5. Bruce Stock, a principal at Stock, testified that McLeod told him at a January 15, 2008 meeting that the parties "had a business relationship," that they "didn't need a contract," and that MDC would "take care" of Stock. RP (Oct. 30, 2012) at 65.

Stock continued to work on the project until December 2008, when McLeod directed it to cease work. During this period, Stock continued to bill MDC based on the $1,414,948 base fee originally proposed in Exhibit A. On September 24, 2008, however, Stock's invoice for April 2008 included five additional service requests, representing "$193.241.44 in additional services billings" not included in the originally proposed contract. After the project terminated, Stock's invoice included seven additional service requests totaling $357,825.50. MDC ultimately paid Stock $1,098,043, representing 82.10 percent of the base fee originally proposed in Exhibit A. MDC did not pay the additional service requests.

On December 17, 2008, Alekson wrote in an e-mail to Smedley, "It has come to our attention that Stock & Associates is not paying the sub consultants to this project. This potentially harms Stuart [McLeod's] unblemished reputation for timely payment of costs incurred in all of his business operations. This is not acceptable." In June 2011, MDC entered into a settlement agreement with Peterson Strehle Martinson, Inc. (Peterson). The agreement described Peterson as a company engaged by Stock "to perform structural engineering services on behalf of McLeod." Under the agreement, MDC agreed to pay Peterson $25,000.

In September 2010, Stock sued McLeod and MDC for breach of contract. Stock sought money damages premised on the defendants' alleged "failure to pay for

services." McLeod and MDC counterclaimed, alleging breach of contract arising from Stock's failure to pay Peterson. Prior to trial, Stock proposed an instruction that would allow the jury to award it damages under a quantum meruit theory. The trial court declined to give the instruction. The jury found that Stock failed to prove a breach of contract. It awarded Stock damages for MDC's nonpayment of additional service request 6, worth $9,462.50. It declined to award damages for the other additional service requests. On the counterclaim, the jury awarded McLeod and MDC $25,000. Posttrial, on Stock's motion, the court vacated the $25,000 award.[1]

In April 2012, the trial court entered a final judgment awarding Stock $9,462.50, representing the value of the sixth additional service request. Stock appeals.

## ANALYSIS

Stock argues that the trial court erred when it declined to give its proposed jury instruction on quantum meruit[2] as a quasi-contract remedy. Before trial, Stock proposed the following instruction:

---

[1] The trial court ruled, "While the jury could legitimately find that plaintiffs violated the Fixed Fee Agreement by submitting [Peterson's] invoice(s) as an ASR, there was no basis for finding that plaintiff's failure to pay PSM violated any agreement between plaintiff and defendants."

[2] Quantum meruit is the method of recovering the reasonable value of services provided under a contract implied in fact.

> A contract implied in fact
> is an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other. The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them.

70335-8-I/5

PLAINTIFF'S INSTRUCTION NO. 27
(Quantum Meruit)
A contractor is entitled to recover in quantum meruit when substantial changes occur which are not covered by the contract and were not within the contemplation of the parties if the effect is to require extra work and materials or to cause substantial loss to the contractor.

The amount of damages recoverable by a contractor in quantum meruit is the reasonable additional costs associated with performing additional work or work as changed by the unanticipated circumstances.

Where a contractor is awarded his reasonable costs in quantum meruit, he is also entitled to profits thereon.

Stock claims the failure to give this instruction prevented the jury from deciding whether to award Stock the value of services provided to MDC regardless of whether there was a contractual agreement. But Stock waived this claim of error by failing to take exception to the trial court's failure to give this instruction.

The principle is well settled. If the trial court fails to give a proposed instruction, the instruction's proponent must take exception to that failure using the procedure in CR 51(f).[3] Goehle v. Fred Hutchinson Cancer Research Ctr., 100 Wn. App. 609, 614, 1 P.3d 579 (2000). CR 51(f). This procedure ensures that the court "is sufficiently apprised of any alleged error in the instructions so that the court is afforded an

---

In other words the elements of a contract implied in fact are: (1) the defendant requests work, (2) the plaintiff expects payment for the work, (3) the defendant knows or should know the plaintiff expects payment for the work.
Young v. Young, 164 Wn.2d 477, 485, 191 P.3d 1258 (2008) (internal citations omitted) (quoting Johnson v. Nasi, 50 Wn.2d 87, 91, 309 P.2d 380 (1957)).

[3] CR 51(f) provides: "Before instructing the jury, the court shall supply counsel with copies of its proposed instructions which shall be numbered. Counsel shall then be afforded an opportunity in the absence of the jury to make objections to the giving of any instruction and to the refusal to give a requested instruction. The objector shall state distinctly the matter to which he objects and the grounds of his objection, specifying the number, paragraph or particular part of the instruction to be given or refused and to which objection is made."

opportunity to correct any mistakes before they are made and thus avoid the inefficiencies of a new trial." Goehle, 100 Wn. App. at 615.

"'The pertinent inquiry on review is whether the exception was sufficient to apprise the trial judge of the nature and substance of the objection.'" Goehle, 100 Wn. App. at 615 (quoting Walker v. State, 121 Wn.2d 214, 217, 848 P.2d 721 (1993)). "The objection must apprise the trial judge of the points of law involved and where it does not so advise the court on any particular point of law, those points will not be considered on appeal." Haslund v. City of Seattle, 86 Wn.2d 607, 614, 547 P.2d 1221 (1976).

Here, the record shows Stock took no exception when the trial court declined to include its proposed quantum meruit instruction in the court's instructions to the jury:

> THE COURT: All right. We've prepared the jury instructions and I've made two very small grammatical changes, but I've left them pretty much as-is. Have we numbered them? Do they have them?
> THE CLERK: Yes, there's a copy that (inaudible) next to them—
> [Counsel for McLeod]: Oh, thank you.
> THE COURT: And are you prepared to make any exceptions at this point?
> [Counsel for Stock]: I'm not prepared to make any exceptions at this point. I don't believe I will make any exceptions at any point, Your Honor, but if I—
> THE COURT: Tell you what we'll do. Let's go ahead with the testimony. Hopefully that will give you a chance to look through the exhibits—the instructions. And then we can take exceptions later on if there are any.
> [Counsel for McLeod]: I don't have any that I'm aware of.
> THE COURT: Okay. Then I think we can bring in the jury, and we'll go ahead and make copies of the instructions now.

RP (Nov. 5, 2012) at 3. After Stock's rebuttal witnesses testified, the trial court proceeded to read the instructions to the jury.

> [Counsel for Stock]: No further witnesses, Your Honor.
> THE COURT: . . . Mr. Brain, anything further?
> [Counsel for McLeod]: No.

THE COURT: All right, ladies and gentlemen, we're just going to move right into jury instructions, which will take about 30 minutes for me to read to you and then we'll proceed with closing arguments.

RP (Nov. 5, 2012) at 4. By failing to take exception below, Stock waived its present assignment of error. Haslund, 86 Wn.2d at 614.

For the first time in its reply brief, Stock faults the trial court. He claims the court deprived it of an opportunity to object or to take exception to the court's jury instructions. According to Stock, this violated the procedure outlined in CR 51(f) and requires reversal. We decline to consider this argument; Stock may not challenge the trial court's compliance with CR 51(f) for the first time on appeal—and not for the first time in its reply brief. RAP 2.5(a); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("An issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

Nevertheless, the record fails to support Stock's assertion. Stock's counsel had several opportunities to take exception to the court's failure to give the instruction. For example, as quoted above, Stock's counsel said that he did not believe he would take exception at any point. He later remained silent as the trial court read the instructions to the jury and then excused them to begin deliberations. Nothing prevented Stock from asking the court to hear its exception to the instruction. In Goehle, we found that counsel waived any error under similar circumstances:

> Goehle complains in her brief that she was prejudiced by the trial court's rush to finish the case and informs us that the trial court precluded discussion of the instructions on the record. She claims the trial court prevented her from pointing out instructional error. But she has not pointed to any discussion in the record that indicates that the trial court rushed the parties or that the parties were surprised by, or made objections to, the pace of the proceedings. More significantly, she fails to point us to anything in the record that suggests that she

> attempted to place her instructional objections and grounds on the record but was cut short by the trial court. Had the trial court here prevented Goehle's attempt to state her objections and grounds on the record, we would have a different story on appeal.

Goehle, 100 Wn. App. at 616. As in Goehle, Stock points to nothing in the record to show it attempted to take exception to the court's failure to give the instruction—however vague—at any point below. We find Stock's attempt to assign fault to the trial judge for its own failure to preserve the quantum meruit instruction claim unpersuasive.[4]

Even if we assume trial court error, the failure to give the quantum meruit instruction constitutes harmless error. "An erroneous jury instruction is harmless if it is 'not prejudicial . . . and in no way affected the final outcome of the case.'" Blaney v. Int'l Assoc. of Machinists & Aerospace Workers, Dist. 160, 151 Wn.2d 203, 211, 87 P.3d 757 (2004) (quoting State v. Britton, 27 Wn.2d 336, 341, 178 P.2d 341 (1947)). "Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law." Bodin v. City of Stanwood, 130 Wn.2d 726, 732, 927 P.2d 240 (1996). The record shows that the trial court did instruct the jury based on an instruction proposed by Stock, which allowed it to argue its quantum meruit theory. Instruction 12 provided:

> If you find that extra work was requested or authorized by the owner, and if you find that there was an agreement between the parties as to the price to be paid for such extras, then the contractor is entitled to receive the agreed price. If the extra work was requested or authorized by the owner and there was no

---

[4] The closing remarks are not in our record. We assume that Stock's counsel used instruction 12 to argue its quantum meruit theory of recovery. In addition, it is likely the trial court declined to give the quantum meruit instruction because it duplicated instruction 12's quantum meruit language underscored above.

> agreement about price, then the contractor is entitled to be paid the reasonable value of the extra work.
>
> If you find that extra work not requested or authorized by the owner, then the contractor is not entitled to be paid for the extra work.

RP (Nov. 5, 2012) at 16 (emphasis added). This instruction permitted Stock to argue that it was entitled to recover the reasonable value of all the additional service request work it performed for MDC beyond the scope of the base contract. Under these circumstances, the error here, if any, had no effect on the jury's verdict.

## Evidentiary Challenge

Stock's second assignment of error states, "The trial court erred by allowing the jury to hear legally untenable argument about McLeod's payment to a subcontractor for Stock & Associates and in instructing the jury that it could find for McLeod about failures to honor contract commitments." Br. of Appellant at 6. This challenge relates to McLeod's counterclaim, which sought reimbursement for the $25,000 payment MDC made to one of Stock's subcontractors. The jury awarded McLeod $25,000, but the trial court later vacated the award on Stock's motion. Stock now argues that the trial court's admission of evidence relating to the subcontractor payment "confused the jury about the parties having a contractual relationship and thereby constituted a statement on the evidence."[5] Br. of Appellant at 28 (boldface omitted). This challenge fails for several reasons.

---

[5] This assertion is unclear as to whether Stock means the constitutional prohibition against comment by the court on the evidence. That prohibition "'is to prevent the jury from being influenced by the knowledge conveyed to it by the court or to the court's opinion of the evidence submitted.'" City of Seattle v. Arensmeyer, 6 Wn. App. 116, 120, 491 P.2d 1305 (1971) (quoting Heitfeld v. Benevolent & Protective Order of Keglers, 36 Wn.2d 685, 699, 220 P.2d 655 (1950)). Nowhere in Stock's briefs does it explain its "statement on the evidence" claim. "Passing treatment of an issue or lack of

First, Stock fails to specify what evidence it believes the trial court improperly admitted. The same is true regarding its allegation that the trial court allowed the jury to hear improper statements about "contract obligations and alleged breaches." Br. of Appellant at 29. Stock never identifies what "statements" it believes were "improper." We typically do not consider inadequately briefed arguments. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 486, 254 P.3d 835 (2011).

Second, Stock cites nothing in the record supporting its assertion that "allowing this argument and submitting this claim to the jury caused a substantial likelihood of prejudice and confusion." Br. of Appellant at 29. Its speculative allegation of jury confusion lacks any factual basis. And as McLeod correctly points out, "If Stock was concerned that the jury would consider evidence and testimony beyond the issue for which it was offered, Stock could have requested a limiting instruction." Resp't's Br. at 40. It is undisputed that Stock requested no such instruction at trial.

Finally, Stock relies on inapposite authority. It relies solely on State v. Fuller, 169 Wn. App. 797, 282 P.3d 126 (2012), which it cites for the proposition that "[b]ecause presenting the counterclaim to the jury was over Stock & Associates' objection, the standard of review is 'whether there was a substantial likelihood that the improper comments prejudiced the [party] by affecting the jury.'"[6] Br. of Appellant at 29 (quoting

---

reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

[6] Stock quotes only a portion of the sentence. The full quotation, read in context, states:
> If a defendant establishes that the State made improper statements, then we review whether those improper statements prejudiced the defendant under one of two different standards of review.

Fuller, 169 Wn. App. at 812). Fuller involved a claim of prosecutorial misconduct. The court explained that because prosecuting attorneys are quasi-judicial officers, they have a duty to ensure that defendants receive a fair trial. Fuller, 169 Wn. App. at 812. It went on to discuss the standards of review applicable to a claims of prosecutorial misconduct. Stock fails to explain how Fuller applies to the present case. It does not.

For the first time in its reply brief, Stock argues that the trial court erred "both in denying Stock & Associates' Motion in Limine to exclude evidence and argument of the [subcontractor] settlement and in denying Stock & Associates' motion for directed verdict on the same issue . . . ." Reply Br. of Appellant at 21. It also argues for the first time that the counterclaim "unduly goes to credibility issues." Reply Br. of Appellant at 25. These untimely claims merit no consideration. Cowiche Canyon, 118 Wn.2d at 809.

## CONCLUSION

We conclude Stock waived its quantum meruit instruction by failing to take exception when the trial court declined to give it. In any event, the trial court gave instruction 12 to the jury, thereby allowing Stock to argue its quantum meruit theory.

---

First, where the defendant preserved the issue by objecting at trial, we evaluate whether there was a substantial likelihood that the improper comments prejudiced the defendant by affecting the jury. But if the defendant failed to object to the improper argument at trial, we employ a different standard of review. Under this second, heightened standard, the defendant must show that the State's misconduct "was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice."

Fuller, 169 Wn. App. at 812-13 (citations omitted) (quoting State v. Emery, 174 Wn.2d 742, 761-62, 278 P.3d 653 (2012)).

70335-8-I/12

And the error, if any, in allowing MDC to present evidence of its counterclaim constitutes harmless error. Stock makes no showing that the evidence affected the jury's verdict.

Affirmed.

WE CONCUR: